655 So.2d 603 (1995)
STATE of Louisiana, Appellee,
v.
Eugene OWENS, Appellant.
No. 26952-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*605 Edward F. Jones, Asst. Indigent Defender, Shreveport, for appellant.
Paul Carmouche, Dist. Atty., Michael A. Pitman, Asst. Dist. Atty., Shreveport, for appellee.
Before HIGHTOWER and BROWN, JJ., and GUIDRY, J. Pro Tem.
BROWN, Judge.
Defendant conditionally pled guilty to possession of cocaine, reserving his right to appeal the denial of his pre-trial motion to suppress contraband seized from his person. See State v. Crosby, 338 So.2d 584 (La.1976). The issue before this court is whether the cocaine seized by a patrol officer from defendant's person should have been excluded.

FACTS
D.E. McDaniels, a 14-year-veteran with the Shreveport Police Department, was working patrol in the Allendale district on November 22, 1993. Officer McDaniels had worked the Allendale area for approximately 11 years. On that date, he was alone, in uniform, and driving a patrol car on the evening shift (3 pm to 11 pm). Shortly after starting his shift, McDaniels stopped a Ford Escort for a moving violation at the corner of Dunlap and Portland. The vehicle was occupied by two females and two males. The two women were known to McDaniels as prostitutes. After being told by the police dispatcher that the vehicle was not reported stolen, McDaniels allowed the group to leave without writing a ticket. Shortly thereafter, the dispatcher contacted McDaniels to state that the car had in fact been reported stolen. McDaniels knew that the two prostitutes regularly plied their trade in the Portland and Laurel Street area, which was within a block of the Escort's initial stop. Officer McDaniels proceeded to that area and found the car abandoned on the east side of a parking lot at the corner of Portland and Laurel. Parked on the west side of the lot was an eighteen-wheel tractor-trailer rig. A man and a woman were talking on the lot between the truck and car. McDaniels immediately recognized the woman as Tersa, a prostitute who worked with the two females who were riding in the Ford Escort when it was initially stopped.
It was late afternoon, around 4:35 p.m. McDaniels approached Tersa to ask about the four people who previously occupied the stolen vehicle. Also, McDaniels wanted to break up an obvious sexual solicitation. Specifically, McDaniels testified that his "[t]otal initial approach was just to gain information on where the subjects were that were attached to the car, that was the total reason for my approach to them, I simply wanted information." On cross examination, he further explained that, "I was going to get them to go about their way, I wasn't going to have sex sold on the corner, not blatantly right there in front of me."
The man meeting with Tersa was defendant, Eugene Owens, a 36-year-old truck driver.[1] When Officer McDaniels began speaking to Tersa, defendant started to walk away. Officer McDaniels asked defendant to stop so that he too could be questioned. Defendant, who was wearing gym-type sweat-pants with an elastic waistband, shoved his right hand inside the pants. Fearing a concealed weapon, Officer McDaniels *606 reacted by grabbing defendant. As the two men wrestled, defendant continued to reach inside his pants with one hand and at one point, an object which McDaniels perceived as approximately the size of a small-caliber, semi-automatic weapon slid down Owens' pants leg. When defendant broke away and thrust both of his hands into his waistband, Officer McDaniels drew his weapon.
On McDaniels' orders, defendant took his hands out of his pants. McDaniels holstered his weapon and "then turned to the side of him (defendant), I had my hands on him, I told him to take out whatever he had because I wasn't going to just leave him. I didn't want to get shot in the back or something." Defendant retrieved from his pants a cigarette pack with five rocks of crack cocaine. Defendant stated, "I just bought it from a dude over there in a white coat." Defendant was arrested and charged with possession of cocaine.
McDaniels further testified that Allendale was a high crime area and that this particular location was the second worst corner for drugs, sex and violence in his district. Considering that this incident occurred in late afternoon, the apparent solicitation for sex, the drug sale by the "dude in the white coat," and the abandoned stolen car, this observation of a busy crime corner was obvious. Throughout this incident, McDaniels was in uniform and alone.
Defendant filed a motion to suppress the introduction of the five crack cocaine rocks seized by McDaniels. The motion was ultimately denied. Thereafter, defendant pled guilty to the charged offense, received a suspended sentence and reserved his right to appeal the court's ruling concerning the legality of the seizure.

DISCUSSION

Motion to Suppress
Both the Fourth Amendment to the United States Constitution and Article 1, § 5 of Louisiana's Constitution protect the right to be free from unreasonable searches and seizures. The initial question presented in this case is the applicability of these constitutional protections. A seizure occurs when a person's freedom to walk away has been restrained by a police officer; however, a seizure does not happen simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the officer and go about his business, the encounter is consensual and a seizure has not occurred. Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
The appropriate inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore police presence and go about his business. Florida v. Bostick, supra. In the present case, Officer McDaniels approached the man and woman in the parking lot to ask questions concerning the previous occupants of the Ford Escort parked on the lot. Neither Tersa nor defendant were suspects in connection with the stolen vehicle; however, Officer McDaniels believed they might have information that could lead him to the parties he had previously seen in that vehicle. When Officer McDaniels began talking to Tersa, he did nothing to indicate that Tersa's or her male companion's freedom to move on was prohibited. When defendant started to walk away, Officer McDaniels asked him to stop and answer a few questions. This request does not necessarily imply that defendant's freedom of movement was restrained or that he had to answer questions. In fact, it was the officer's intent for the parties "to go about their way" and not consummate an illegal sexual contract. Defendant's response was to reach inside his pants causing McDaniels to react. Officer McDaniels acted to protect himself from what a reasonable person would have viewed as a threatening act. This case, however, does not depend on whether or not this initial conversation was consensual.
An arrest and a full search must be predicated upon probable cause. Public safety, however, requires some flexibility for police intervention to investigate and prevent crime. Although searches and seizures conducted *607 outside the judicial process without prior approval by a judge or magistrate are per se unreasonable, there are a few exceptions. One such exception was pronounced in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be brewing, the officer may briefly detain and make reasonable inquiries aimed at confirming or dispelling his suspicions. The stop in such circumstances is far less intrusive than an arrest and is predicated upon a reasonable suspicion which is something less than probable cause. An officer in such a situation may not act on a "hunch" but must be able to state facts that gave rise to his suspicion that criminal activity may be "afoot." If the officer has an independent reason to believe that the person is armed, he may also conduct a "patdown" search for his protection.
The totality of the circumstances must be considered in determining whether the necessary reasonable suspicion existed to justify an investigatory detention. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Belton, 441 So.2d 1195 (La.1983).
Defendant, who appeared to have driven to this particular location in a tractor-trailer rig, was conversing with a known prostitute near a stolen vehicle in a high crime area known for drug trafficking and prostitution. When Officer McDaniels began to question Tersa, defendant attempted to leave. Reasonable and articulable facts existed to support a request that defendant stop for questioning. Although Officer McDaniels may not have intended to detain defendant, this initial approach would qualify as an investigatory stop under LSA-C.Cr.P. Art. 215.1(A) or Terry v. Ohio. Under the totality of the circumstances, a valid investigatory stop, premised upon the reasonable suspicion that defendant and Tersa had committed or were about to commit a criminal offense, occurred. Considering the high crime area, a "patdown" search would also have been reasonable.
The thrust of defendant's argument is based upon his conclusion that an arrest, without probable cause, took place at the point where he and Officer McDaniels wrestled in the street. In support, defendant cites State v. Wichers, 392 So.2d 419 (La. 1980), for the proposition that an arrest occurs when law enforcement authorities tackle a defendant. In Wichers, the defendant was chased by police, who tackled him and conducted a search of his person. The court concluded that an arrest occurred at that point. We note, however, that when one is tackled during an attempt to flee an investigatory stop, the more appropriate word is "seizure" rather than "arrest".
The United States Supreme Court in California v. Hodari, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), ruled that a seizure means a taking into possession or physical control. Under Hodari, a stop or seizure occurs either through physical force or submission to the assertion of authority. The Louisiana Supreme Court, however, went further and concluded that under our state constitution, a stop or seizure occurs whenever a party is physically restrained or such a restraint is "virtually certain" to result from the police encounter. State v. Tucker, 626 So.2d 707 (La.1993).
The facts of this case indicate that Officer McDaniels rushed defendant only when he thrust his hand inside his waistband. While the officer testified that he "tackled" defendant, the altercation was described more particularly as a "shoving-wrestling match" where the parties remained standing, grappling from one side of the street to the other. Officer McDaniels testified that he initially had no intention of arresting or seizing defendant. Rather, he rushed defendant out of fear that defendant was reaching for a concealed weapon. When the officer was finally forced to draw his weapon, it was not to take defendant into custody, but rather to protect against a reasonable perception that defendant was reaching into his waistband for a weapon. Officer McDaniels had reason to believe that defendant's action was threatening. Clearly, Officer McDaniels could protect himself from this obvious danger.
*608 Officer McDaniels was justified in drawing his weapon, forcing defendant to remove his hands and ordering defendant to take the object from his pants. By this stage in the altercation, the officer had seen a suspicious bulge the size of a small, concealed weapon frequently confiscated by officers patrolling the Allendale area. Officer McDaniels had himself confiscated such weapons during patdown searches. Regardless of how Officer McDaniels' initial approach is viewed, defendant's behavior in walking away and making a threatening gesture was adequate to justify an investigatory detention. In a footnote to the majority opinion in California v. Hodari, supra, the court stated, "[T]hat it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident, and arguably contradicts proverbial common sense. See Proverbs 28:1 (`The wicked flee when no man pursueth')."
With the presence of a concealed object visually verified, the officer dispensed with a patdown search and merely ordered defendant to produce the object. Under the circumstances, we find that defendant's actions constituted an independent justification to search for a dangerous weapon. See LSA-C.Cr.P. Art. 215.1(B). This search for a weapon was incident to a lawful investigatory stop. Therefore, the evidence obtained during the search was not tainted and defendant's motion to suppress was properly denied.

Errors Patent
An error patent review conducted pursuant to LSA-C.Cr.P. Art. 920(2) disclosed a single error. The trial court failed to inform defendant that the three-year prescriptive period for post-conviction relief does not begin to run until judgment is final under LSA-C.Cr.P. Art. 914 or 922.

CONCLUSION
The trial court's denial of defendant's motion to suppress is affirmed. The trial court is instructed to send written notice to defendant to inform him of the starting point for the prescriptive period applicable to post-conviction relief. This notice shall be provided within ten days of the rendition of this opinion and receipt by defendant shall be noted in the record.
AFFIRMED.
NOTES
[1] Although not specifically stated in the record, Owens was apparently the driver of the tractor-trailer rig parked on the lot.