721 So.2d 94 (1998)
STATE of Louisiana, Appellee,
v.
Donnie Ameal PATRICK, Appellant.
No. 31380-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*96 J. Wilson Rambo, Louisiana Appellate Project, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, Stephen K. Hearn, Jr., Assistant District Attorney, for Appellee.
Before NORRIS, BROWN and GASKINS, JJ.
GASKINS, Judge.
Following a jury trial, the defendant, Donnie Ameal Patrick, was convicted of attempted first degree robbery, a violation of La. R.S. 14:27 and 14:64.1. The trial court sentenced the defendant as a second felony offender to serve 25 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant appealed. We affirm his conviction and sentence.

FACTS
Daksha Desai was an owner of the Pines Motel on Highway 80 in Ruston, Louisiana. Just after 8:00 p.m. on January 1, 1997, she saw a man approaching the motel office. At about the same time as the man entered the office, the telephone rang and Ms. Desai answered it. While she spoke on the telephone, she observed the man for several minutes. When she hung up the phone, she asked the man if she could help him, and he said: "Just give me all the money you have or I shoot you." Although Ms. Desai had already seen his face for several minutes, he then placed a white cloth diaper across his face.
According to Ms. Desai, the man pointed at her with one hand. The defendant kept his other hand below the desk so she could not see it. Although she never saw a weapon in his possession, she testified that she thought he had one in either his pocket or the hand which she could not see.
Instead of giving the man money as he demanded, Ms. Desai exited the office through the nearby kitchen door. She attempted to call police but had trouble operating the hotel's telephone. She saw the man *97 flee from the office and go to the car wash next door. Cortez Anderson, a 13-year-old boy walking near the car wash, saw the man running behind him. Anderson watched as the man climbed into a truck which was parked in a stall at the car wash. Anderson testified that the man was wearing a longsleeved striped shirt.
When Ms. Desai[1] got through to the police, she gave them a description of the man and his clothing, including a description of his shirt. She recalled describing it as longsleeved and multi or mixed colors with a stripe. The colors she remembered mentioning were purple, red, blue, probably green and yellow. According to the dispatcher, Ms. Desai said that the shirt had red and blue stripes. The call was dispatched at 8:19 p.m. Police came to the area minutes later and began their investigation. An officer saw the Anderson boy running toward his home and stopped him. Anderson described the man and his truck to police, and the officer then took Anderson to the motel.
At 8:30 p.m., Officer Curtis Hawkins of the Ruston Police Department pulled over a pickup truck on Highway 80 matching the general description of the robber's vehicle. The defendant was driving the truck. The defendant said that he had no driver's license and lied to the officer about his name. The officer performed a pat-down search for weapons and found none; no weapons were found inside the truck. However, on the seat of the truck, the officer found a multicolored striped shirt and a white cloth diaper.
Minutes later, officers took Anderson from the motel and drove him to view the defendant. Anderson positively identified the defendant as the person he had seen running into the car wash and also identified the truck. Anderson noticed that the defendant had changed out of his multicolored striped shirt into a T-shirt.
An officer then took Ms. Desai to view the defendant. She testified that before she saw the defendant, officers told her that they had a suspect they would like her to see. The officer who took Ms. Desai to view the defendant testified that he did not tell her that Anderson had already identified the defendant and could not have told her because he did not have that information. Ms. Desai identified the defendant as the would-be robber, and she also noticed that he had changed out of his long-sleeved striped shirt into a T-shirt. She made her identification before police showed her the striped shirt. Both witnesses recognized the striped shirt as the one that the robber had worn. Ms. Desai also identified the diaper found in the truck as the item the robber used to cover his face.
The defendant testified and denied that he tried to rob the motel. He explained that he went to Wal-Mart, where at about 8:00 p.m. he had an acquaintance return a chamois for a refund, and then went to a gas station where he bought gas, cigarettes and a Coke shortly before police stopped him. He admitted that he lied to Officer Hawkins about his name but explained that he did so because his driver's license had been revoked. He also testified that the officer threatened to hit him with his flashlight if he lied a second time. On cross-examination, he gave an excruciatingly detailed account of his activities around the time of the crime. The prosecutor queried the defendant in minute detail about the places he visited, his actions at the various places, his route, all of the pertinent times involved and the amount of money he obtained from the return at Wal-Mart.
Rebuttal evidence from prosecution witnesses totally refuted the defendant's alibi. A Wal-Mart employee testified that store records showed that the only return of a chamois that day occurred at 6:15 p.m. (The robbery occurred just afer 8:00 p.m.) The defendant's acquaintance, who returned the item to Wal-Mart because the defendant had no identification, testified that he and the defendant left the store immediately after making the return. An employee of the gas station where the defendant claimed to have stopped after 8:00 p.m. testified that he closed the store about 10 minutes before 8:00 p.m. on the night of the crime and documented that closing with register tapes. Finally, Officer Hawkins testified about the distances *98 and driving times between the Wal-Mart, the gas station and the point of arrest. The drive time between the gas station and the point of arrest was about seven minutes. The officer stopped the defendant at 8:30 p.m.
A unanimous jury convicted the defendant of attempted first degree robbery. The trial court subsequently sentenced him as a second offender to serve 25 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence.

SUFFICIENCY OF EVIDENCE
In his first two assignments of error, the defendant challenges the sufficiency of the evidence with which he was convicted.[2] In particular, he contends that the evidence was legally insufficient to prove that: (1) he led the victim to reasonably believe he was armed, and (2) he was the perpetrator of the offense.
When the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews sufficiency, as a failure to satisfy the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), will moot the trial errors. State v. Hearold, 603 So.2d 731 (La.1992); State v. Adams, 30-815 (La.App.2d Cir.6/24/98), 715 So.2d 118.
The constitutional standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra.

Armed with a dangerous weapon
The defendant's first assertion is that the state failed to prove beyond a reasonable doubt that he led the victim to reasonably believe that he was armed with a dangerous weapon.
In relevant part, La. R.S. 14:64.1 provides:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
The definition of attempt, La. R.S. 14:27, provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In State v. Fortune, 608 So.2d 148, 149 (La.1992), the supreme court explained the requirements of proof for the completed crime of first degree robbery:
The statute has objective and subjective components. It requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of La. R.S. 14:65. Cf. State v. Byrd, 385 So.2d 248 (La.1980). To this extent, La. R.S. 14:64.1 differs from other robbery statutes in which the threat of force alone constitutes a violation of the statute despite its failure to place an atypical victim in actual fear. See Commonwealth v. Mays, 248 Pa.Super. 318, 375 A.2d 116 (1977); State v. Birch, 479 N.W.2d 284 (Iowa 1991).
Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's *99 immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery.
As noted, the defendant was convicted of the attempted offense, which requires proof that he had the specific intent to rob and that he did an act "for the purpose of and tending directly toward the accomplishing of his object."
The victim testified that when the defendant threatened to shoot her if she did not hand over the money, he pointed the finger of an empty hand at her while he kept his other hand hidden from view beneath the counter. Ms. Desai testified that the defendant's words and actions led her to believe at least in the beginning of the encounter that the defendant had a weapon. Unlike the victim in State v. Nelson, 518 So.2d 518 (La.App. 3rd Cir.1987), Ms. Desai could not see what the defendant was doing with his hidden hand. However, such evidence is not necessary to establish the requisite element, particularly for the attempted crime. Compare, e..g., State v. Gales, 622 So.2d 808, 813 (La.App. 4th Cir.1993) (in which defendant's keeping his hands behind his back while threatening to shoot victims was deemed sufficient proof of La. R.S. 14:64.1). Unlike the Fortune case, there is no evidence that the victim believed the threat to be a joke; rather, the victim was initially scared and believed that the defendant had a weapon. However, because she could not see the weapon, Ms. Desai concluded that either the defendant was unarmed or that she could escape before he could harm her. Under the circumstances, the state proved beyond a reasonable doubt that the defendant did an act tending directly toward accomplishing the first degree robbery of Ms. Desai.

Identity as perpetrator
The defendant also contests the state's proof of his identity. Where the defendant denies that he was the person who committed the crime, the state bears the burden of negating any reasonable probability of misidentification. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, on rehearing, 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Ms. Desai positively identified the defendant as the person who tried to rob her. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760; State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990). It is the function of the jury and not that of the appellate court to assess the credibility of witnesses. State v. Miller, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Carey, 628 So.2d 27 (La.App. 2d Cir.1993), writ denied, 94-0018 (La.3/25/94), 635 So.2d 236.
In brief, the defendant points out several alleged inconsistencies in Ms. Desai's testimony with regard to her identification of the defendant as the would-be robber. These alleged inconsistencies concern Ms. Desai's description of the robber (in particular, his shirt color) to the police dispatcher and to the court at the preliminary hearing and the motion to suppress. However, through cross-examination the defendant presented each of these points to the jury at trial in great detail, and the jury chose to credit Ms. Desai's identification. She testified that she saw the defendant's face and that she was positive that the defendant was the man who tried to rob her. Her identification was bolstered by Cortez Anderson's observations, which were also subject to thorough cross-examination at trial. Finally, the jury heard the testimony of Officer Hawkins that the defendant had a multicolored striped shirt and a white diaper in his possession just minutes after the robbery. For all these reasons, the jury was entitled to credit Ms. Desai's testimony and to reject the defendant's attack on her identification.
These assignments of error are without merit.

*100 SUGGESTIVE IDENTIFICATION
The defendant filed a motion to suppress identification in the trial court, urging that the identifications by Ms. Desai and Anderson were made under suggestive circumstances. The court conducted a hearing on the motion and ruled that the identifications were admissible.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). It is the defendant's burden, when challenging an identification procedure, to show that there was a substantial likelihood of misidentification as a result of said procedure. State v. Prudholm, 446 So.2d 729 (La.1984).
One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. Such identification procedures are generally permitted where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for onthe-spot identification or when the identification is made shortly after the commission of the crime. State v. Dauzat, 364 So.2d 1000, 1002 (La.1978); State v. Cotton, 511 So.2d 1207, 1211 (La.App. 2d Cir.1987); State v. Evans, 485 So.2d 161, 163-164 (La.App. 2d Cir.1986), writs denied, 488 So.2d 687, 688 (La.1986). Such a prompt identification, under appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Williams, 420 So.2d 1116 (La.1982); State v. Bickham, 404 So.2d 929 (La.1981); State v. Cotton, supra.
In Manson v. Brathwaite, supra, 432 U.S. at 114-116, 97 S.Ct. at 2253-2254, the United States Supreme Court set out five factors to be considered in determining whether an identification gave rise to a substantial likelihood of misidentification:
1) The witness's opportunity to view the criminal at the time of the crime;
2) The degree of attention paid by the witness during the commission of the crime;
3) The accuracy of any prior description;
4) The level of certainty demonstrated at confrontation; and
5) The time between the crime and the confrontation.
See also State v. Martin, 595 So.2d 592 (La.1992), holding that when reviewing a trial court's ruling on a motion to suppress, a reviewing court will consider the entire record, including the testimony presented at trial. Martin, at 596.

Ms. Desai's identification
In brief, the defendant cites a portion of Ms. Desai's testimony at the suppression hearing in which she indicated that, while en route to view the suspect, the police told her that the Anderson boy had identified the man they had stopped as the same man he saw running to the car wash. However, earlier in her testimony at the hearing, Ms. Desai stated: (1) she was close to the defendant and saw his face before he covered it; (2) she was looking at the defendant most of the time after he entered the motel; (3) she saw the diaper the defendant used to cover his face; and (4) she got a good look at his shirt, which was "yellow and purple and all kind of mixed colors." When Ms. Desai saw the defendant later, she recognized that he was wearing a different shirt than he wore in the motel. The officer who transported her to see the defendant testified that the witness recognized the defendant and noted his change in clothes. Ms. Desai independently asked the officers to look for a diaperwhich they foundbecause, in her words, the diaper was "another point of witness." Also, she identified the defendant within an hour of the attempted robbery.
Under these circumstances, whatever suggestiveness was inherent in this oneon-one confrontation was de minimis in comparison with the overwhelming certainty of the witness' identification. As the trial judge noted, it is particularly telling that Ms. Desai recognized the defendant immediately even though he had changed shirts. The discovery of the shirt and the diaper in the defendant's truck significantly reduced the likelihood of misidentification.

*101 Cortez Anderson's identification

Similar factors support the reliability of Anderson's identification despite Anderson's testimony that police told him that they believed the suspect to be the robber. The most significant inconsistency in Anderson's testimony is his differing descriptions of the defendant's truck, although the descriptions themselves seem reasonably accurate. At the hearing on the motion to suppress, Anderson said that all he could see of the truck was the tailgate, which he described as brown; photos of the truck showed that at one point, the tailgate was painted "primer red," although the defendant said that it had been painted black before this incident. At trial, Anderson said that he told the officers that the defendant's truck was brown; however, Officer Clint Williams said that the young man told him that the truck was grey. Officer Hawkins, who stopped the defendant, testified that the truck was "either a black or a dark matte gray finish or some real dark color close to that." There was also some confusion about his description of the truck's wheels.
However, none of these variations are sufficient to undermine the overall reliability of Anderson's identification. The boy identified the defendant less than an hour after he saw him. Anderson recognized the defendant and also noticed that he had changed shirts. Officer Williams testified at trial that Anderson "almost jumped out of his seat saying `That's the truck and that's him' as we were driving by." Anderson remained positive of the identification throughout all the proceedings.
In short, the defendant failed to show that these identifications were unreliable, and the trial court properly admitted the identification evidence. This assignment of error is without merit.

EXCESSIVE SENTENCE
In his final assignments of error, the defendant argues that the trial court failed to comply with La.C.Cr.P. art. 894.1 and imposed an excessive sentence.
The penalty for first degree robbery is imprisonment at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence. La. R.S. 14:64.1. The punishment for an attempted offense is a fine or sentence of imprisonment not to exceed onehalf of the largest fine or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. La. R.S. 14:27(D)(3). Consequently, the maximum sentence for attempted first degree robbery is 20 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. See, e.g., State v. Sweet, 575 So.2d 937 (La.App. 2d Cir.1991). There is no minimum sentence.[3]State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903. The disability against parole carries over to the attempted crime. State ex rel. Sullivan v. Maggio, 432 So.2d 854 (La.1983). However, the trial court never sentenced the defendant under the provisions of these statutes.
Following the defendant's conviction, the state filed an habitual offender bill charging that he was a fourth felony offender with previous convictions for simple burglary, simple robbery and attempted simple escape. The court conducted a hearing on the charge. At the hearing, the state elected to pursue only a second felony offender adjudication, relying on the defendant's May 13, 1987 conviction for simple burglary. After being advised that he had the right to remain silent, the defendant admitted that he was the same person convicted in the earlier offense.
La. R.S. 15:529.1 provides, in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall *102 be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction....
The penalty range for attempted first degree robbery as a second felony offender is thus 10 years to 40 years imprisonment at hard labor. Although this section does not by its terms prohibit parole for a second felony offender, the disability against parole carries over from the underlying sentencing provision. See State v. Bruins, 407 So.2d 685 (La.1981). Sentences imposed under the Habitual Offender Law are not subject to probation or suspension. La. R.S. 15:529.1(G).
In sentencing the defendant, the court described the circumstances of the present offense and noted that cross-examination by the state made "very clear" that the defendant had "without question" lied in his testimony. The court next recited the defendant's criminal history, beginning with the burglary (committed in 1985) which formed the basis for the habitual offender adjudication. Although no presentence investigation (PSI) report was ordered in the instant case, the court relied on a PSI prepared in another case which detailed the defendant's criminal history. The court said that the defendant had committed two other simple burglary offenses in 1985 in Union Parish. More recently, the defendant committed simple robbery in Lincoln Parish in March 1996; the defendant pled guilty to that crime and was sentenced to serve 2½ years imprisonment.
The court went on to examine aggravating factors under La. C. Cr. P. art. 894.1, finding that the defendant used threats of violence in the commission of the offense and that he has persistently been involved in similar offenses which were not considered as part of the multiple offender adjudication. The court found no mitigating factors, saying that the defendant would likely commit another crime were the sentence suspended, that the defendant was in need of correctional treatment in a custodial environment, and that a lesser sentence would deprecate the seriousness of the crime.
After the court imposed the 25-year sentence, defense counsel made a motion to reconsider sentence. The defendant argued that he did not actually use any force or violence against the victim and did not have a weapon. The court denied the motion, stating that any time a threat implies the potential use of a dangerous weapon, that threat potentially exposes the parties and others to violence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
The trial court clearly considered and articulated the facts it believed important under La. C. Cr. P. art. 894.1. The court also considered the defendant's threat of violence, even though this threat of violence is inherent in the charge. However, the court's finding that the defendant was persistently involved in similar offenses is valid and supported by the record. The defendant committed a simple robbery[4] only nine months before he committed this even more serious crime.
The second inquiry concerns constitutional excessiveness. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the *103 offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Davis, 28,662 (La.App.2d Cir.9/25/96), 680 So.2d 1296.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La. App.2d Cir.4/2/97), 691 So.2d 345; State v. Henton, 28,576 (La.App.2d Cir.9/25/96), 682 So.2d 777, writ denied, 96-2590 (La.3/27/97), 692 So.2d 391.
This defendant committed two robbery offenses within a span of less than a year. The second offense involved the threat of the use of a dangerous weapon, suggesting an ominous escalation of the defendant's criminal behavior. Judging from the most similar case in the jurisprudence, this 25-year sentence is not excessive. In State v. Southall, 93-2341 (La.App. 1st Cir.3/3/95), 652 So.2d 581, writ denied, 95-0705 (La.9/1/95), 658 So.2d 1260, the first circuit affirmed a 40-year sentence for a second felony offender convicted of attempted first degree robbery. That defendant was armed with a BB pistol which resembled a real pistol, which he pointed at the victim. That defendant had a more extensive criminal record than Patrick, including one conviction for armed robbery and for illegal possession of stolen property and three convictions for burglary.
Although the defendant's record in Southall was more extensive, the proximity in time of the defendant's two violent offenses is more than sufficient support for his midrange sentence.
These assignments of error are without merit.

ERROR PATENT
This record does not show that the trial judge informed the defendant that the prescriptive period for post-conviction relief begins to run from the finality of conviction. See La.C.Cr.P. art. 930.8. Consequently, we direct the trial court to send appropriate written notice to the defendant within ten days of the rendition of this opinion and to file, in the record, written proof that the defendant received such notification.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] English is not Ms. Desai's native language.
[2] The issue of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C. Cr. P. art. 821. Although the record fails to show that the defendant filed such a motion, in State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273, this court ruled that a defendant is entitled to appellate review of the sufficiency of the evidence even in the absence of a motion for post-verdict judgment of acquittal.
[3] In State v. Anderson, 499 So.2d 140 (La.App. 2d Cir.1986), this court stated that the attempted crime carried a minimum sentence of 1½ years, but Callahan has changed that interpretation.
[4] Like attempted first degree robbery, simple robbery is defined as a crime of violence. La. R.S. 14:2(13)(x) and (y).