h GASKINS, J.
The defendant, Richard Greenwell, was convicted of attempted second degree kidnapping, a violation of La. R.S. 14:27 and 14:44.1, and aggravated burglary, a violation of La. R.S. 14:60. Adjudged a habitual offender, he was sentenced to consecutive sentences of 20 years at hard labor *33 without benefit of parole, probation or suspension of sentence for attempted second degree kidnapping and 15 years at hard labor for aggravated burglary. The defendant now appeals, urging six assignments of error. For the reasons set forth below, we affirm the defendant’s convictions and sentences.
FACTS
Shortly before 11:30 p.m. on September 26, 1997, two incidents occurred in the Hillside subdivision of West Monroe. The first one involved an intruder at a residence located at 326 Hillside Circle. Taló-la Bowie, who resided at that house with her children and her sister, had been performing household cleaning that evening. In particular, she had been washing clothes, going back and forth between the interior of her home and her laundry room which was located off of the carport. She thought she locked the door after she entered the house the last time. Ms. Bowie was cleaning her bathroom when she heard the outside door leading to the carport open. Stepping into the hallway from the bathroom, she observed a white male in an orange shirt and blue jeans stealthily entering her home. She saw that he was armed with a knife. The man also observed her and began to walk toward her with the knife pointed in her direction.
Swiftly, Ms. Bowie retreated into the bathroom and shut the door. She began to scream to her sister, Shanta Holland, who was asleep in one of the bedrooms. In response to her sister’s cries, Ms. Holland ran into the hallway. She too saw the white male armed with a knife and began to scream. The man fled from the house. The sisters called 911; their call was logged in at 11:27 p.m.
| gMelissa Parker and Christy Cage, both age 12, were walking to Melissa’s home on Wilson Drive from a babysitting job. On Lou Drive near a wooded area, they saw a white male in an orange shirt and blue jeans “jogging” toward them. When he got close to them, he grabbed Christy by the arm and asked the girls, “Who’s going first?” Christy observed that her assailant lacked several fingers on his right hand.[1] She broke away from him and began to run. The man then grabbed Melissa’s arm; holding a knife to her chest, he attempted to pull her toward the wooded area. However, Melissa also broke free; she described the man’s grip on her arm as “weird” and not “very tight.” She fell to the ground but got up and began to run in the opposite direction from Christy. Both girls screamed as they fled. . The man initially chased Christy, but the girl reached Melissa’s house safely and told Melissa’s mother what had happened. As the Parkers’ telephone was out of order, their neighbors across the street called the police. Meanwhile, Melissa had run to the home of a neighbor who also called 911. Both telephone calls were received at 11:35 p.m.
Deputy Sheriff Thomas Malone of the Ouachita Parish Sheriffs Department and his partner received a radio message concerning the Hillside Circle burglary which described the intruder as a white male in an orange shirt and blue jeans. They were cautioned that the man was armed with a knife. As Deputy Malone approached the corner of Hillside Drive West and Hillside Drive South, he saw a man matching that description — the defendant — running down the street. Stopping his patrol car in front of the defendant, Deputy Malone ordered him to stop and let him see his hands. The defendant did not initially obey the command, and the deputy was forced to draw his weapon and repeat the order several times before gaining the defendant’s compliance. Deputy Malone observed the ^defendant place his hands behind his neck; when the defen *34 dant was patted down, a knife was recovered from the collar behind his neck.
The defendant appeared nervous and recounted to Deputy Malone that he was being chased by a man in a pick-up truck who had yelled insults at him. He stated that earlier that evening he had attended a high school football game, and an acquaintance had dropped him off in the neighborhood instead of taking him home. He had tried calling home for a ride from a nearby grocery store. After no one answered the telephone, he had begun to walk home when a man in a pick-up truck had driven by and yelled at him. He told Deputy Malone that he recalled a friend named King living at 326 Hillside Circle. He said he had gone to that house, knocked on the door, and left after no one answered the door. According to his account, he then heard the pick-up truck returning, began to run, and encountered the officers.
The defendant was transported to the residence on Hillside Circle. Both of the sisters identified him as the man they had seen in their home armed with a knife. Ms. Bowie also identified the knife. The police then took the defendant to the Parker residence. Christy and Melissa were shown the defendant separately. Each positively identified him as the man who accosted them. Additionally, Melissa recognized the knife as the one held to her chest.
The defendant was charged with aggravated burglary of the Bowie/Holland residence and with the attempted second degree kidnapping of Melissa Parker. He filed a motion to suppress on the basis that he was stopped without probable cause; the motion was denied. Waiving his right to a jury trial, the defendant opted for a bench trial. The trial judge found him guilty of both offenses.
The state filed a habitual offender bill, asserting that the defendant had a prior conviction for indecent behavior with a juvenile. He was adjudicated a second felony offender and sentenced to 15 years at hard labor on the charge of Daggravated burglary. He received a sentence of 20 years at hard labor without benefit of parole, probation or suspension of sentence for attempted second degree kidnapping. The sentences were ordered to be served consecutively. The defendant’s motion to reconsider sentence was denied.
The defendant appeals, asserting six assignments of error. One assignment of error was not briefed and is thus deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La.1990).
SUFFICIENCY OF EVIDENCE
In this assignment of error, the defendant challenges the sufficiency of the evidence supporting his convictions for aggravated burglary and attempted second degree kidnapping. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), provides the proper standard of appellate review for a sufficiency of evidence claim. That standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude *35 beyond a reasonable doubt that defendant was guilty of every | .¡essential element of the crime. State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
It is the function of the trier of fact to assess credibility and resolve conflicting testimony, and where the trier of fact has made a rational decision, the appellate court should not disturb it. State v. Butler, 30,798 (La.App.2d Cir.6/24/98), 714 So.2d 877, writ denied, 98-2217 (La.1/8/99), 734 So.2d 1222. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808.

Aggravated burglary

In order to prove the crime of aggravated burglary, the state was required to show that the defendant, without authorization, entered an inhabited dwelling where a person was present, with the specific intent to commit a felony or theft therein, and was armed with a dangerous weapon or armed himself with a dangerous weapon after entering, or committed a battery upon any person while in such place or in entering or leaving such place. La. R.S. 14:60.
The defendant did not live in the home located at 326 Hillside Circle. He crept into the house through an unlocked carport door late at night. This was clearly an unauthorized entry. The dwelling was inhabited, both by the victims, Ms. Bowie and Ms. Holland, who testified at trial, as well as by several children who were apparently asleep while the defendant was in their home. Moreover, the evidence shows that while in the home, the defendant had a dangerous weapon — a knife — which he held out toward both the women as he advanced upon them in a threatening manner.
The main issue here is the defendant’s intent upon entering and while he was in the residence. Specific intent is a state of mind that need not be proven as a Ififact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760; State v. Brown, 618 So.2d 629 (La.App. 2d Cir.1993), unit denied, 624 So.2d 1222 (La.1993). The determination of whether the requisite intent is present is a question for the trier of fact. State v. Brown, supra. Furthermore, the state need only prove intent to commit a felony within the victim’s home at the moment of unauthorized entry, and not the actual felony itself. State v. Walter, 94-2221 (La.App. 4th Cir. 5/29/96), 675 So.2d 831, writ granted and cause remanded on other matter, 96-1702 (La.6/20/97), 695 So.2d 1340, on remand, 94-2221 (La.App. 4th Cir. 7/23/97), 698 So.2d 439.
Notwithstanding the defendant’s claim regarding his intent, the trial judge found, after the bench trial, that:
On the charge of Aggravated Burglary both witnesses to that burglary identified this Defendant and also saw and described the dangerous weapon, the knife, which the Defendant held and there was therefore no question that this Defendant without any authorization entered the home of the victims while armed with a dangerous weapon. This Court also concluded that the Defendant had the requisite intent to commit either a [theft] or some felony while in the inhabited residence which is an element of the crime of Aggravated Burglary. This Court concluded that the State did not have to prove exactly what [theft] or felony was intended but that only the intent and not the particular crime intended had to be proven. The intent of this Defendant entering an inhabited residence at a late hour, while armed with a knife and actually moving around in the residence according to the testi *36 mony of the witnesses while knowingly being observed by these two victims in the home convinced this Court of the intent of this Defendant.
It was reasonable for the trier of fact to conclude that the defendant intended to commit a theft or some other felony upon his unauthorized entrance into the inhabited residential dwelling. It is the function of the judge, in this case, to assess the credibility and resolve conflicting testimony. Thus, where a trier ol| 7fact has made a rational determination, an appellate court should not disturb it. State v. Thomas, supra. Because the trial judge had ample evidence upon which to determine that the defendant had the requisite intent to commit a felony upon entering the house, as well as the other elements necessary to convict the defendant of aggravated burglary, we find that there was sufficient evidence to sustain the defendant’s conviction for aggravated burglary.

Attempted Second Degree Kidnapping

The defendant was convicted of attempted second degree kidnapping, in violation of La. R.S. 14:27 and 14:44.1. The statute for attempt, La. R.S. 14:27, provides in relevant part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
La. R.S. 14:44.1 defines second degree kidnapping and states, in pertinent part:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
[[Image here]]
(3) Physically injured or sexually abused;
[[Image here]]
ls(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For the purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another....
Hence, a conviction for an attempted offense rests upon sufficient proof that the offender actively desired to cause the prescribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La. R.S. 14:10; La. R.S. 14:27; State v. Parish, 405 So.2d 1080 (La.1981).
The defendant bases his argument for reversal of the attempted second degree kidnapping charge on the fact that there were too many contradictions between the testimony of the young victims, Christy and Melissa, to support a conviction. As noted above, it is the function of the trier of fact to assess credibility and resolve conflicting testimony, and where the trier of fact has made a rational decision, the appellate court should not disturb it. State v. Butler, supra. It is always the function of a judge or jury to assess credi *37 bility and resolve conflicting testimony. State v. Thomas, supra.
Both girls testified that the defendant was the only man they saw on the street after they left their babysitting job. They both testified that they were able to see the defendant, especially his clothing. Each girl testified that the defendant grabbed her by the wrist or arm; that Christy got away first and began to run in the direction of Melissa’s house; that Melissa was held longer and dragged closer to the woods; and that Melissa escaped and fell to the ground close to the wooded area. Each also testified that the defendant began to run after Christy when Melissa got away.
l8The trial court obviously believed the testimony of the victims rather than that of the defendant. The inconsistencies alleged by the defendant are not so contradictory as to warrant a reversal of this conviction.

Identifications

The defendant also complains that the identifications of the defendant made by the victims are suspect because they were one-on-one identifications rather than line-up identifications. It is the burden of the defendant, when challenging an identification procedure, to show that there was a substantial likelihood of mis-identification as a result of said procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Patrick, 31,380 (La.App.2d Cir.10/28/98), 721 So.2d 94, writ denied, 98-2957 (La.3/19/99), 739 So.2d 780.
One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. Such identification procedures are generally permitted where the accused is apprehended within a short period of time after the commission of the offense and is returned to the scene of the crime for on-the-spot identification or when identification is made shortly after the commission of the crime. State v. Dauzat, 364 So.2d 1000 (La.1978); State v. Patrick, supra; State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987). Such prompt identification, under appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Williams, 420 So.2d 1116 (La.1982); State v. Bickham, 404 So.2d 929 (La.1981); State v. Patrick, supra; State v. Cotton, supra.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set out five factors to be considered in determining whether an identification gave rise to a substantial likelihood of misidenti-fication:
| inl) The witness’ opportunity to view the criminal at the time of the crime;
2) The degree of attention paid by the witness during the commission of the crime;
3) The accuracy of any prior description;
4) The level of certainty demonstrated at the confrontation; and
5) The time between the crime and the confrontation.
Of the burglary victims, Ms. Bowie testified that she saw the defendant sneak into her house and then turn around, face her, look straight into her eyes and advance toward her. She described this man as holding a knife, wearing an orange shirt and blue jeans and as having short hair and stubble on his face. Ms. Holland testified that she came out of her bedroom that evening after her sister called her and also saw a white man in her home, with a knife, wearing an orange shirt and blue jeans and having stubble on his face and dark blond hair. Both women identified the defendant, who was brought back to their home in a patrol car that same night shortly after the burglary. Each was sure that the defendant was the intruder. Nothing in this record suggests that any police officer coerced them into identifying the defendant.
*38 The two young girls, particularly Melissa, were able to give the police a description of their assailant. They were provided with the same opportunity to view the defendant, in the back of a police car, on the same night within a few minutes of the crime. There is nothing to suggest that the police influenced them to identify the defendant as their assailant, and the girls were shown the defendant individually. Each girl was sure that the defendant was indeed the person who accosted them.
This assignment of error lacks merit.
J^MOTION TO SUPPRESS
The defendant filed a pretrial motion to suppress in which he claimed that he was illegally detained because the police lacked reasonable suspicion or probable cause to stop him. Consequently, he requested suppression of all evidence gathered against him thereafter, including the knife, his statements to the police and his identification by all of the victims. The trial court denied the motion.
Both the United States and the Louisiana Constitutions protect against unreasonable searches and seizures. Probable cause for an arrest exists when facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Gates, 24,995 (La.App.2d Cir.1/19/94), 630 So.2d 1345, writ denied, 94-0640 (La.6/17/94), 638 So.2d 1091; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
In the instant case, Deputy Malone heard the report of the burglary with a description of the perpetrator as a white male, wearing an orange shirt and blue jeans and armed with a knife. Minutes later, Deputy Malone observed a white male, dressed in an orange shirt and blue jeans, running in the subdivision where the burglary was reported. The fact that the defendant matched the description of the reported suspect, in addition to his proximity in time and distance to the reported burglary, clearly created probable cause in the mind of an experienced officer like Deputy Malone. Additionally, the defendant refused to stop running when initially ordered by police and continued to fidget with his collar even after being stopped and instructed to put his hands where officers could see them.
11?The initial detention of the defendant to answer some questions was based on probable cause to believe that the defendant was the suspect who had committed the burglary. However, even under the lesser standard of reasonable suspicion, the police had the right to stop the defendant. The right of law enforcement officers to stop and make reasonable inquiries aimed at confirming or dispelling suspicions of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as both federal and state jurisprudence. Such an investigatory stop is predicated upon a reasonable suspicion to believe that the individual has been, is, or is about to be engaged in criminal conduct. Terry v. Ohio, supra; State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Owens, 26,952 (La.App.2d Cir.5/10/95), 655 So.2d 603; State v. Wesley, 28,012 (La.App.2d Cir.4/3/96), 671 So.2d 1257, writ denied, 96-1127 (La.10/4/96), 679 So.2d 1379.
Because they knew a knife was used in the burglary and based on the late hour of the night, the officers were justified in searching the defendant as incident to an arrest or, under the Terry rationale, as a pat-down search for weapons for their own protection. Since the police’s detention and arrest of the defendant was proper, the evidence seized and the subsequent statements given by the defendant and the identifications made by all of the victims were legitimately obtained.
This assignment is without merit.
*39 HABITUAL OFFENDER HEARING
In this assignment of error, the defendant questions whether the state met its burden of proof with regard to the adjudication of the defendant as a second felony offender. At the habitual offender hearing the state produced the testimony of Steve Fisher, the parole and probation officer who supervised the defendant while he was on parole for a charge of indecent behavior with a juvenile. The state also called Heather Scott, a fingerprint expert, to examine the fingerprints on the | ^offered bills of information to ensure that the fingerprints on both were the defendant’s fingerprints. However, after Ms. Scott was qualified as an expert, the. defendant stipulated that his fingerprints were on the bill of information for his previous conviction. Thus, the defendant conceded that he had been convicted for a prior felony, indecent behavior with a juvenile, and sentenced to serve seven years at hard labor in October 1995.
The prosecution filed a habitual offender bill of information in this matter on June 1, 1998 and served same on the defendant. La. R.S. 15:529.1(D)(1)(b) provides the procedural mechanisms by which a defendant can object to the use of deficient prior conviction:
If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
If the defendant objects to the voluntariness of the earlier plea or its being a knowing plea, the state must affirmatively show through a contemporaneously recorded transcript that the plea was voluntary and made with an awareness of its consequences. State v. Shelton, 621 So.2d 769 (La.1993); State v. Bolton, 379 So.2d 722 (La.1979). This defendant did not make a written objection to the bill of information before the habitual offender hearing. Further, he made no objections that the prior guilty plea was flawed at the habitual offender hearing. Instead, the defendant stipulated that his fingerprints were on the earlier bill of information, thus conceding the previous conviction contained in the habitual offender bill of information. Because the defendant failed to raise any objections | uprior to the habitual offender hearing and the state proved that the defendant had been convicted of two felonies, this assignment is without merit.
EXCESSIVE SENTENCE
In two assignments of error, the defendant argues that the trial court erred in imposing excessive sentences. Specifically, he contends that his sentences were contrary to the law and the evidence, that the evidence showed that the defendant was not guilty of these crimes or was only guilty of lesser included offenses, that he was remorseful, and that the sentences were excessive.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show adequate consideration of the criteria set forth in La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475 (La.1982). As noted above, the record contains a sufficient factual basis for the sentences.
*40 The second inquiry requires an examination of the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
|1sThe penalty range for aggravated burglary is one to 30 years; for a habitual offender such as the defendant, the enhanced penalty range is 15 to 60 years. La. R.S. 14:60 and 15:529.1. For the offense of attempted second degree kidnapping, the maximum sentence is 20 years; under the habitual offender provisions, the sentence range is 10 to 40 years. La. R.S. 14:27, 14:44.1, 15:529.1. In the instant case, the defendant received sentences of 15 years at hard labor for aggravated burglary and 20 years at hard labor without benefits for attempted second degree kidnapping. Clearly, these sentences in the lower available ranges for this habitual offender were not excessive.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.C.Cr.P. Art. 883. It is within the trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. George, 26,867 (La.App.2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855. Although both offenses in the present case occurred on the same night, they arose out of two separate crimes and involved two different sets of victims. Thus, they are not considered a single course of conduct, and the trial court correctly directed that the defendant’s sentences should run consecutively, rather than concurrently.
The trial court reviewed a presentence investigation (PSI) report in this matter prior to sentencing the defendant. The court articulated extensive reasons concerning why it believed that these were was the appropriate sentences for this mature, 36-year-old defendant. In particular, the court noted that the defendant was paroled about two months before the present offenses, and that his prior felony— like the assault on Christy and Melissa— involved an attack on a young girl. Additionally, the defendant had several misdemeanor convictions for assaultive |1fibehavior, including four counts of simple battery.[2] Upon review of the record and the PSI report, and in light of the defendant’s previous conviction for indecent behavior with a juvenile, which demonstrates a history of inappropriate and criminal behavior with juveniles, it is clear that the sentences are not excessive.
These assignments of error are without merit.
*41 CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.
STEWART, J., concurs.

. The defendant lacks three fingers on his right hand as the result of an offshore drilling accident.

. One of the simple battery convictions was originally a charge of cruelty to a juvenile, and at least one of the simple battery convictions was an offense against the defendant's stepson. Another charge of simple battery was reduced to disturbing the peace by fistic encounter, to which charge the defendant pled guilty. Likewise, an aggravated battery charge was reduced to criminal mischief. The defendant also had a DWI conviction. Although the defendant pled guilty to indecent behavior with a juvenile (his 12-year-old stepdaughter), the original charges in that matter were aggravated rape and aggravated oral sexual battery.