754 So.2d 412 (2000)
STATE of Louisiana, Appellee,
v.
Roger B. THOMPSON, Appellant.
No. 33,204-KA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*413 Amy C. Ellender, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Geary S. Aycock, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, STEWART and PEATROSS, JJ.
NORRIS, Chief Judge.
Roger B. Thompson was convicted of one count of armed robbery, in violation of La. R.S. 14:64, and sentenced to serve 35 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Thompson now appeals his conviction and sentence. We affirm.

Facts
George McClendon, a night auditor at the Holiday Inn Express in West Monroe, testified that in the early morning hours of May 25, 1997, a robber entered the lobby, came up to the desk and asked him about room availability. After some nervous conversation and gestures, the robber asked if he could use McClendon's telephone. As McClendon reached for the *414 phone, the robber "came over the desk and pulled a pistol all at the same time," telling McClendon to get a bag and put all the money in it. McClendon replied he didn't have a bag, but he reached into the cash drawer, got about $320 and placed it in the robber's hands. McClendon described the robber as a black male, wearing a white Pasadena baseball cap on his head and a navy blue bandana with white dots around his neck, and armed with a silver-plated automatic pistol. At about 1:54 a.m., immediately after the suspect left, McClendon dialed 911 and reported the armed robbery.
Officer Mark Smith of the West Monroe Police Department was on duty in a marked patrol car when he got the call about the armed robbery. He turned on his flashing lights when he got the call, but turned them off as he turned onto Constitution Avenue taking the most direct route to the Holiday Inn Express. Starting on the Thomas Road exit ramp, he reached the Holiday Inn in less than one minute, passing no vehicles or pedestrians en route.
Officer John Rutledge, a K-9 handler with the West Monroe Police Department, also responded to the robbery call. Within a minute or two after receiving the call, Officer Rutledge reached Thomas Road going westbound on the Interstate where he observed a vehicle entering onto the Interstate eastbound from the Thomas Road on ramp; this is the only direct route to eastbound Interstate 20 from the Holiday Inn Express. The vehicle's high rate of speed was immediately apparent. The vehicle was a mid-sized 1988 model four-door blue Oldsmobile.
Officer Rutledge watched the speeding vehicle, and observed two occupants against the back lighting from the businesses and street lights. Up to this point, Officer Rutledge did not have the flashing lights of his patrol car turned on, and his vehicle is what is referred to as a "slick cop," with strobes in the headlights and by the front and back rearview mirrors only and no visible flashing light bars on top of the car. He crossed the median, turned on his flashing lights and began following the speeding vehicle. Officer Rutledge followed the Oldsmobile at approximately 125 to 130 miles per hour in pursuit, but the speeding vehicle was still gaining distance. When Officer Rutledge realized his fast speed was not overtaking the vehicle, he dropped to a safer speed, cut off his flashing lights and kept the speeding vehicle in sight as he called for backup. When his backup arrived, Officer Rutledge turned on his flashing lights and tried to initiate a traffic stop on the speeding vehicle. The vehicle accelerated and exited the interstate at Texas Avenue; Officer Rutledge pursued the suspects until the vehicle finally came to a stop at the Elm Street Apartments, where it crashed into another vehicle.
Officer Rutledge saw two suspects exit the vehicle; the passenger ran ahead toward the gate of the apartment complex, while the driver headed left and ran around the apartment building. Officer Rutledge and his police dog followed the driver suspect. When Officer Rutledge rounded the corner of the apartment building he saw his police dog growling, scratching and biting at the door of an apartment. The facial area around the door knob was chipped away behind the door latch, as if it had been forced open and there was fresh mud on the doorstep.
The resident of this apartment, Johnny Ray Plane, was awakened by an intruder breaking in the front door. The intruder removed some of his clothes, and told Mr. Plane that he didn't want the police to know he was there. Mr. Plane did not know the intruder or give him permission to come in, and was scared of him. Officer Rutledge and backup officers entered and extracted Thompson from the apartment. Mr. Plane allowed the police to search his apartment and denied any involvement in the armed robbery.
*415 West Monroe Police Captain Warren Lee also responded to the armed robbery call that night, joining Officer Rutledge in the pursuit. On the Texas Avenue exit, Captain Lee pulled up to the left of Officer Rutledge's patrol car, so as to shine his headlights more on the driver's side of the fleeing vehicle. Captain Lee testified that there were two occupants in that vehicle, and that he secured it after the suspects abandoned it. Captain Lee observed a white Pasadena cap and a silver pistol in the suspect vehicle.
Detective Michael Gray of the West Monroe Police Department was working a DWI detail with Officer Rutledge when they received the armed robbery call. Each took a different route to the scene in order to catch any suspects escaping the robbery scene from different directions. Officer Gray, heading toward the Holiday Inn Express, did not see any fleeing or speeding vehicles or anyone on foot running away.
Latonya Drayton, Thompson's girlfriend, testified that prior to the robbery, Thompson was carrying something wrapped in a towel, with just the tip showing; she thought it resembled the barrel of the silver pistol shown to her at trial. Drayton and Thompson had been together the evening of the robbery, but he had left about 11:00, saying he was going to the store; he left alone and never returned. At trial, Drayton identified a green shirt in a photograph and a blue cap as belonging to Thompson.
Officer Lawrence Ken Moore of the West Monroe Police Department was a detective called to investigate the armed robbery. He arrived at the Elm Street apartments to take the suspect's vehicle over from Captain Lee. At trial, Moore identified photographs of the interior of the Oldsmobile. One of the photographs showed a blue Tommy Hilfiger baseball cap on the floorboard of the driver's side of the car, which Drayton identified as belonging to Thompson. Also on the driver's side floorboard was a yellow box of.380 caliber ammunition matching the caliber and type of the pistol found in the vehicle. Other photographs showed two navy blue and white bandanas and black gloves on the front seat of the vehicle, a.380-caliber magazine of bullets and an off-white baseball style cap with the logo "Pasadena" on the passenger seat, and the silver pistol found on the floorboard. Officer Moore also identified a cash register receipt taken from the vehicle, showing that two bandanas were purchased at Mart on May 25, 1997 at 1:25 a.m., which would have been just minutes before the armed robbery.
Officer Moore interviewed Thompson who at first denied, but later admitted, being the driver of the vehicle. However, Thompson continually denied involvement with the armed robbery. Officer Moore acknowledged on cross-examination that Thompson did not fit the description given by McClendon of the robber, and he would not guess that Thompson was the gunman. Thompson was found guilty of armed robbery and has appealed his conviction as insufficient and his sentence as excessive.

Law and Analysis
Thompson argues that he was never identified as the robber and that if he was the driver he did not know about the robbery when he picked up the passenger.
The proper standard of appellate review for a sufficiency of evidence claim under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
The Jackson standard is applicable in cases involving both direct and circumstantial *416 evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When circumstantial evidence forms the basis for conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when viewing the evidence in the light most favorable to the prosecution, whether the possible alternative hypotheses is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Owens, supra; State v. Durham, 32,154 (La.App.2d Cir.8/20/99), 748 So.2d 1. This is not a separate test from Jackson v. Virginia. Id.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). Evidence of flight, concealment, and attempt to avoid apprehension indicates consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.), writ denied, 619 So.2d 573 (1993). It is for the jury to decide the presence of the requisite intent.
An appellate court does not evaluate credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
"Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S.14:64. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
No direct evidence indicates that Thompson entered the motel and pulled the gun; McClendon was unable to identify him as such in a photo lineup or at trial. However, extensive circumstantial evidence shows beyond a reasonable doubt that Thompson drove the getaway vehicle for the armed robbery. The record shows that on the night of the crime, Thompson left his girlfriend's house in his sister's car hours before the crime. Two navy blue bandanas with white dots were purchased at the K-Mart near the Holiday Inn Express just minutes before the crime. The gunman in the armed robbery, sporting a navy blue bandana around his neck and a white Pasadena cap, took a silver pistol and robbed the night auditor at the Holiday Inn Express of $320.00. The gunman then fled the Holiday Inn Express on foot.
Thompson obviously drove his getaway vehicle straight to Interstate 20 and sped away at a high rate of speed, attracting the attention of several officers responding to the armed robbery call. The officers testified that there were clearly two occupants in Thompson's vehicle. From the testimony at trial and Thompson's own statement *417 to Officer Moore, it is clear that Thompson led police on the chase and was the suspect apprehended afterwards.
Many items of physical evidence found in the vehicle driven by Thompson linked him to the armed robbery, notably a cash register receipt, two navy blue bandanas with white spots, a white Pasadena cap, and a silver plated gun. The receipt indicated two bandanas similar to the one described by the victim were purchased at the K-Mart near the crime scene, just minutes before the robbery. The bandanas, Pasadena cap, and gun found in the car fit the victim's description of items on the gunman at the time of the robbery.
Thompson's girlfriend acknowledged that sometime before he was arrested, he was carrying a bundle that looked like a wrapped-up gun. A pistol fitting the general description given by the victim, together with ammunition, were also recovered from Thompson's vehicle.
Finally, Thompson obviously fled at an extreme speed even before he saw the police car. Viewed in the light most favorable to the state, Thompson's claim that he was trying to escape to avoid being arrested on an outstanding warrant does not reasonably explain why he sped away from the area before he observed a pursuing police vehicle. It is much more likely that Thompson fled at an extreme speed because he had just helped his associate and passenger commit an armed robbery. Thompson's participation in the charged offense is the only reasonable explanation for his flight, the forcible entry into Mr. Plane's apartment and his attempt to conceal himself. Thompson's passenger and associate in the robbery also fled the police.
Simply put, the record evidence, both direct and circumstantial, is sufficient to support the finding beyond a reasonable doubt that Thompson was involved in the armed robbery, aiding and abetting the crime by participating in the purchase of disguises, securing a weapon and driving the getaway car. Jackson v. Virginia, supra. This assignment of error lacks merit.
Thompson also challenges his sentence as excessive. Defense counsel made an oral motion to reconsider sentence at the time of sentencing, which stated only that Thompson's sentence was excessive. Since the motion for reconsideration merely alleged that the sentence is excessive, under State v. Mims, 619 So.2d 1059 (La. 1993), Thompson is "simply relegated to having the appellate court consider the bare claim of excessiveness." This bare claim preserves only a claim of constitutional excessiveness. Id.; State v. McEachern, 624 So.2d 43 (La.App. 2d Cir.1993).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A conviction of armed robbery requires imprisonment at hard labor for not less than five years and for not more than 99 years, without benefit of parole, probation or suspension of sentence. La. R.S. 14:64 B.
The PSI shows that Thompson has two prior felony convictions: simple burglary of an inhabited dwelling in 1990 and attempted simple burglary in 1991. Thompson has misdemeanor convictions for simple battery, possession of marijuana, disturbing the peace, and resisting arrest. He also has been arrested for arson with intent to defraud, simple escape, contributing *418 to the delinquency of a minor, and theft. The sentencing judge noted in mitigation that Thompson has a one year old daughter and he is helping the state in its investigation and prosecution of the gunman in the instant robbery. The sentencing judge also noted that Thompson had violated his probation in the past. In sum, a review of the record reveals that when Thompson's sentence of 35 years is viewed in light of his history, felonious past, crime of conviction, and the harm done to society, it does not shock the sense of justice nor is it grossly disproportionate. This assignment of error is without merit.
Even if we were to review Thompson's sentence for article 894.1 compliance, we would find no error. The district court is not required to list every aggravating or mitigating circumstance, as long as the record shows an adequate consideration of the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Adger, 30,215 (La. App.2d Cir.12/10/97), 707 So.2d 1000. The objective of article 894.1 is the articulation of a factual basis for sentence, and not rote recitation of the guidelines. As seen above, we have reviewed the record and find that there is a factual basis for sentencing Thompson to 35 years at hard labor without benefit of probation, parole, or suspension of sentence and the sentencing judge adequately considered the guidelines of La. C.Cr.P. art. 894.1.[1]

Conclusion
For the foregoing reasons, Thompson's conviction and sentence is affirmed.
AFFIRMED.
NOTES
[1] In brief, Thompson alleges counsel was ineffective for filing only an oral pro forma motion for reconsideration, thus limiting him to a claim of constitutional excessiveness. Pursuant to our above discussion, we find that he was not prejudice by counsel's failure and as such we find no merit in claim of ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied 95-1398 (La.11/3/95), 662 So.2d 9.