811 So.2d 140 (2002)
STATE of Louisiana, Appellee,
v.
Antonio SEWELL, Appellant.
No. 35,549-KA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*142 Louisiana Appellate Project by J. Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Suzanne M. Owen, Catherine M. Estopinal, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, PEATROSS and KOSTELKA, JJ.
PEATROSS, Judge.
Defendant, Antonio Sewell, was tried by jury and convicted of armed robbery. He was adjudicated a third-felony offender and was sentenced to life imprisonment. Defendant now appeals, asserting eight assignments of error, which raise the following issues: (1) whether the evidence was sufficient to support Defendant's conviction; (2) whether the trial court erred in denying Defendant's motion to suppress an identification by the victim; (3) whether there was sufficient evidence to support Defendant's adjudication as a third-felony offender; and (4) whether Defendant's sentence is excessive. For the reasons stated herein, Defendant's conviction and sentence are affirmed.

FACTS
On the evening of January 16, 1999, the victim, Willie Ashley, went to the Fina Mart, located at 3100 Jewella Avenue in Shreveport, to make some purchases. Mr. Ashley parked his Oldsmobile 98 automobile on the right side of the Fina Mart *143 near the gas pumps and entered the store. Mr. Ashley's godmother, Edna Brown, was working at the Fina Mart that evening and her fiancé, James Thomas, was visiting with her inside the store. Mr. Ashley made his purchases and returned to his car. While Mr. Ashley was getting into his car, he was confronted by a black male, later identified as Defendant, Antonio Sewell. Defendant was wearing a black and white plaid flannel shirt-jacket. Defendant demanded Mr. Ashley's car; and, when Mr. Ashley refused, Defendant produced a silver colored .380 automatic weapon and shot Mr. Ashley twice in the left leg. One bullet went through Mr. Ashley's leg and the other lodged in his pelvic bone. Defendant again demanded Mr. Ashley's car keys. Mr. Ashley slung the keys on the other side of the pump and dragged himself out of his car. When Defendant returned to the car with the keys, he pointed the gun at Mr. Ashley's chest. Mr. Ashley begged Defendant not to shoot him again. Mr. Ashley saw Defendant wave his gun toward the store and saw the occupants of the store duck down. Defendant demanded that Mr. Ashley give him his money and "everything." Mr. Ashley surrendered his money, driver's license and pager to Defendant and Defendant fled the scene in Mr. Ashley's car.
Ms. Brown and Mr. Thomas heard the gunshots and looked out of the store window. Mr. Thomas told Ms. Brown that Mr. Ashley had been shot and to telephone 911. The two saw a man dressed in a jacket or shirt standing in the driver's side doorway of Mr. Ashley's car making motions with a gun. After the robber fled, Ms. Brown tried to administer aid to Mr. Ashley's wounds until medical assistance arrived.
A few blocks away from the Fina Mart at about 9:50 p.m., Officer Shawn Hinderberger of the Shreveport Police Department was in his parked police vehicle under a street light writing a report on an unrelated matter when he heard two gunshots. A minute or two later, Officer Hinderberger heard the scrape of metal as a car "bottomed out" in a nearby intersection. The officer looked up and saw a vehicle with no headlights traveling northbound on San Jacinto. He observed the vehicle stop just past the intersection of San Jacinto and Milton, one block (approximately 50 to 60 yards) from where Officer Hinderberger's vehicle was parked. After watching the stopped car for a minute or so, Officer Hinderberger considered the activity to be suspicious and turned on his spotlight. He spotlighted the driver, who was alone in the car. The driver immediately stepped out of the vehicle, ran around the front of the vehicle and fled eastbound on Milton. Officer Hinderberger then issued a radio broadcast describing the fleeing suspect as a black male wearing a black and white plaid shirt or jacket and jeans. He then drove his police vehicle down Milton, but lost sight of the suspect as he fled between some houses. Officer Hinderberger circled the block twice and advised headquarters that the suspect was in the area. Officer D.W. Ramsey, who was also patrolling the area, then advised Officer Hinderberger by radio that he had the suspect in custody. When Officer Hinderberger arrived, Officer Ramsey was wrestling the suspect in the middle of the road. Officer Hinderberger saw a chrome-plated pistol on the road approximately two feet away from the suspect's hand. During the struggle, Officer Lane Montgomery arrived at the scene. Officer Hinderberger grabbed the suspect's wrist and handcuffed the suspect with Officer Montgomery's assistance. Officer Hinderberger observed the suspect's plaid/checkered shirt on the road approximately five to ten feet behind the suspect. He collected the loaded gun and shirt as *144 evidence and placed them in the trunk of his vehicle. Officer Montgomery secured the abandoned vehicle and Officer Hinderberger, having learned of the robbery in the meantime, went to the Fina Mart.
At the Fina Mart, Officer Hinderberger opened the trunk of his vehicle and took out the gun and the plaid/checkered shirt to turn them over to the detectives. Ms. Brown and Mr. Thomas identified the shirt as the one worn by the robber.
Detective Rod Johnson went to LSU Medical Center to interview Mr. Ashley, who was being treated for his gunshot wounds in the emergency room. Mr. Ashley quickly recounted the armed robbery to Detective Johnson, describing the robber as a black male with a goatee and mustache, wearing a black and white flannel jacket, light blue jeans, white tennis shoes and possibly a black "skull cap." After questioning Mr. Ashley, Detective Johnson saw Officer Ramsey bringing the handcuffed defendant into the hospital, and observed that Defendant's clothing and physical appearance fit the description Mr. Ashley had given of the robber. (The record indicates that Defendant received a cut to his hand during the struggle with the officers and was taken to LSU Medical Center for treatment.) Detective Johnson stopped Officer Ramsey and Defendant at the emergency room entrance and inquired of Officer Ramsey what possessions Defendant had "on him." Detective Johnson reached into Defendant's pockets and retrieved some folded bills, which were wrapped around Mr. Ashley's driver's license. Detective Johnson then showed the license to Mr. Ashley, who identified it as his own. The items were later turned over to Detective Paul Robinson. Despite efforts of the officers to prevent contact between Mr. Ashley and Defendant in the emergency room, Mr. Ashley testified that he saw Defendant when he walked past Mr. Ashley's room.
Subsequently, as part of the investigation, Detective Robinson prepared a six-person photographic lineup consisting of Defendant's photograph and five computer-selected photographs of persons resembling Defendant. The photographs were randomly placed and then numbered in lineup format. Detective Robinson showed the photographic lineup to Mr. Ashley at his residence a day or so after the robbery. Detective Robinson instructed Mr. Ashley that the suspect may or may not be in the lineup. He also cautioned Mr. Ashley that there may be some variations in hairstyles because of when the photographs were taken and that the persons may appear lighter or darker, depending on the lighting used when the photographs were taken. Without hesitation, Mr. Ashley picked Defendant out of the photographic lineup as the armed robber.
An investigation of the scene of the armed robbery was conducted by Officer Danny Duddy. Items of physical evidence were recovered from the scene, including spent shell casings, the projectile portion of a shell and a weapon with an empty magazine and four live cartridges. Photographs of the crime scene were also taken. Richard Beighley, a firearms identification expert employed by the North Louisiana Crime Lab, performed tests and made a positive match between a test bullet fired from the .380 "Lorson" (sic) automatic recovered near Defendant during his arrest and the bloody bullet found in the Fina Mart parking lot where Mr. Ashley was shot.
In August 1999, after Defendant was charged with the offense of armed robbery, he filed a pro se motion to suppress Mr. Ashley's identification of him as the perpetrator of the armed robbery. Defense *145 counsel then filed a motion to suppress the identification and a supplemental and amended motion to suppress items seized from Defendant without a warrant pursuant to his detention. A hearing was conducted on the motions on July 13, 2000. At the hearing on the motion to suppress, Officer Hinderberger testified, identifying Defendant as the person he chased and arrested on the night of the armed robbery. He further testified regarding his knowledge of the facts surrounding the chase and arrest of Defendant and the recovery of the gun and plaid/checkered shirt/jacket. He stated that Officer Ramsey transported Defendant back to the Fina Mart.
Detective Robinson also testified at the hearing. The detective stated that he interviewed Mr. Ashley after his release from the hospital and he further described how he prepared and presented the photographic lineup to Mr. Ashley and how Mr. Ashley identified Defendant as the robber without hesitation. In addition, Detective Robinson was cross-examined about Officer Ramsey's report regarding whether Mr. Ashley ever failed to identify Defendant at the scene. Detective Robinson reviewed Officer Ramsey's report, which stated, "[u]pon my arrival at the scene I had the victim try and identify the subject of (sic) the one who shot him. The victim stated that he wasn't sure because the subject was wearing a black ski mask." Detective Robinson stated that some mention was made during the investigation that Defendant wore a "skull cap," but the cap was never located.
Detective Johnson was also called as a witness at the hearing on the motions to suppress. Detective Johnson interviewed Mr. Ashley at the hospital. He related Mr. Ashley's description of the robber as a black male wearing a black and white flannel jacket, light blue jeans, white tennis shoes, a blue skull cap and a goatee and a mustache. Detective Johnson described his encounter with Officer Ramsey and Defendant and stated that he discovered Mr. Ashley's driver's license in Defendant's pants pocket. The defense presented no witnesses at the hearing. Both motions to suppress were denied by the trial court.
At trial, Mr. Ashley made an in-court identification of Defendant as the person who robbed and shot him on January 16, 1999, and identified his own driver's license. Mr. Ashley stated that he saw Defendant on two occasions after the robbery and before he identified Defendant in the photographic lineup. The first time was at the Fina Mart before he was taken away in the ambulance. The ambulance workers rolled his stretcher near the police unit while the officers pulled Defendant out of the unit. Mr. Ashley stated that he positively identified Defendant to a police officer at the scene. The second time Mr. Ashley saw Defendant that evening was at the hospital when Defendant walked past his room. During cross-examination, Mr. Ashley denied ever making a statement to any officer at the scene that he could not identify Defendant because he was wearing a ski mask. It is noted that Officer Ramsey was not available to testify at trial because of injuries he received in the line of duty.
Ms. Brown and Mr. Thomas both testified at trial, relating their accounts of the events surrounding the robbery. Officer Hinderberger related the events surrounding Defendant's flight and arrest. He also made an in-court identification of Defendant as the person he arrested on the night of the crime. Detective Johnson testified regarding his interview with Mr. Ashley at the hospital and related his preparation of the lineup and Mr. Ashley's identification of Defendant as the robber. *146 Finally, Mr. Beighley's expert testimony identified the bloody bullet found at the crime scene as one shot from the weapon found near Defendant at the time of his arrest. Defendant was subsequently convicted of armed robbery by a jury verdict of 10 to 2.
Following his conviction, Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal. The State then filed a fourth-felony habitual offender bill of information against Defendant. A hearing on the motions was conducted in November 2000 and the motions were denied. In so ruling, the trial court found that the victim's prior viewing of Defendant did not unconstitutionally taint the photographic lineup identification.
At this same hearing, Defendant filed an opposition to the fourth-felony habitual offender bill, arguing that he was not properly Boykinized and his guilty plea was involuntary in a predicate offense for docket number 158,234. Evidence was adduced and the trial court reserved the right for the parties to make additional arguments before rendering his written ruling. Deputy Gary Bass, a fingerprint identification expert, testified that the fingerprints contained on the bill of information in docket number 152,419 (for simple burglary committed on April 19, 1990, to which Defendant pled guilty on November 26, 1990), the bill of information in docket number 152,588 (for possession of a firearm by a convicted felon committed on December 9, 1990, in which Defendant pled guilty to attempted possession of a firearm by a convicted felon on March 4, 1991) and the bill of information in docket number 158,234 (for unauthorized use of a movable committed on February 14, 1992, to which Defendant pled guilty on May 1, 1992) matched Defendant's fingerprints on the fingerprint card.
The State also introduced the certified minute entry in docket number 150,460, which was incorporated into 152,419, and the certified transcript in docket number 150,460, which was changed to docket number 152,419 (for simple burglary committed on April 19, 1990). The certified minute entry and certified guilty plea transcript in docket number 152,588, for attempted possession of a firearm by a convicted felon committed on December 9, 1990, were introduced into evidence. The State also introduced into evidence the certified minute entry and certified guilty plea transcript in docket number 158,234, for attempted unauthorized use of a movable committed on February 14, 1992.
Defendant argued that the State could not use the conviction in docket number 150,460 (which was later changed to 152,419) as both a predicate offense to docket number 152,588 (attempted possession of a firearm by a convicted felon) and as a predicate offense for Defendant's adjudication as a fourth-felony multiple offender. Defendant contended that the State could only use the predicate offenses to prove a possible third-felony offender adjudication. Defendant further argued that the Boykinization in docket number 152,419 (previously 150,460) was deficient because the trial court did not fully explain to him his right to a trial by a jury or judge and did not advise Defendant of his rights to appeal and post-conviction relief. Defendant made the same challenge to the conviction of attempted possession of a firearm by a convicted felon and the conviction of unauthorized use of a movable. The trial court deferred its ruling until December 13, 2000, when it adjudicated Defendant to be a third-felony offender.
On December 20, 2000, Defendant was sentenced as a third-felony offender under La. R.S. 15:529.1A(2)(b)(ii), to serve life imprisonment at hard labor, without benefit *147 of probation, parole or suspension of sentence. The trial court noted that one of the felonies was a crime of violence. Defendant filed a motion to reconsider sentence, which was denied by the trial court. Defendant now appeals his conviction, adjudication as a third-felony offender and sentence.

DISCUSSION
For clarity and brevity, we will address Defendant's eight assigned errors according to the issue(s), as set forth above, raised by each assignment. We begin with Defendant's claims that the evidence presented at trial was insufficient to support his conviction.

Sufficiency of the evidence
Defendant asserts that the only meaningful evidence presented against Defendant was Mr. Ashley's testimony, which, according to Defendant, contains internal contradictions and irreconcilable conflicts. In particular, Defendant notes that the police report of Officer Ramsey, dated January 16, 1999, indicates that Mr. Ashley could not positively identify Defendant when Defendant was returned to the scene because "the subject was wearing a black ski mask." Mr. Ashley, however, testified at trial that he positively identified Defendant at the scene and denied ever making the statement about a ski mask to any officer. Defendant further notes that, at trial, Mr. Ashley first denied giving a statement to detectives at the hospital, but later admitted giving the statement.
Defendant next argues that no physical evidence linked him to the crime, noting that the gun and jacket were not found in his possession. In addition, Defendant notes that Mr. Ashley alleged that $220 was stolen during the robbery; however, only $20 was discovered on Defendant at the time of his arrest. Defendant points out that the stolen pager was never found and no fingerprints matching Defendant's were found in the car or on the gun.
The State counters by asserting that Mr. Ashley denied the inconsistencies at trial, that Mr. Ashley was adequately questioned and cross-examined and the jury's decision to accept Mr. Ashley's testimony as credible should not be disturbed on appeal. The State also emphasizes the fact that Defendant had the victim's driver's license in his possession at the time of his arrest as physical evidence of Defendant's identity as the armed robber. In addition, the firearms identification matched the gun found in close proximity to Defendant to the bullet found at the crime scene.
The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Gay, 29,434 (La.App.2d Cir.6/18/97), 697 So.2d 642. The record shows that Defendant properly raised the issue of sufficiency of the evidence in the trial court in a motion for post-verdict judgment of acquittal.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 *148 (La.10/17/97), 701 So.2d 1333. Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When a defendant claims that he is not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hunter, 33,066 (La. App.2d Cir.9/27/00), 768 So.2d 687, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150; State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
To convict a defendant of armed robbery, the state is required to prove: (1) the taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App.2d Cir.10/31/01), 799 So.2d 684; State v. Guy, 97-1387 (La.App. 4th Cir.5/19/99), 737 So.2d 231, writ denied, 99-1982 (La.1/7/00), 752 So.2d 175.
Evidence of flight, concealment and attempt to avoid apprehension indicates consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Ratliff, 35,144 (La.App.2d Cir.9/26/01), 796 So.2d 101; State v. Thompson, 33,204 (La.App.2d Cir.3/1/00), 754 So.2d 412; State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
A review of the record in the case sub judice reveals that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convict Defendant of armed robbery. The testimony of the victim, corroborated in part by the testimony of witnesses to the crime from *149 inside the Fina Mart, was sufficient to prove that Defendant took a car, money and a driver's license (anything of value) from the victim's person (his immediate control) by verbally demanding the victim's car and "everything" and by shooting the victim (use of force or intimidation) while armed with a gun (dangerous weapon).
The record further shows that the State met its burden of negating any reasonable probability of misidentification of Defendant as the armed robber in this case. We acknowledge that Mr. Ashley's testimony regarding his identification of Defendant as the armed robber at the scene was inconsistent with information contained in a police report made by an officer who was unavailable to testify at the time of trial. Mr. Ashley, however, denied this information at trial. We find that, under the circumstances of this particular case, this minor inconsistency fails to qualify as an internal contradiction. Likewise, we do not find that Mr. Ashley's testimony contains irreconcilable conflicts with physical evidence. Thus, this one witness's testimony, obviously believed by the jury, was sufficient to support the jury's conclusion regarding Defendant's identity as the armed robber. This court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
Furthermore, contrary to Defendant's arguments, Mr. Ashley's testimony was not the only evidence of Defendant's identity as the robber. Other direct evidence and facts inferred from circumstantial evidence supported the jury's conclusion that Defendant was guilty of armed robbery. Police testimony established that, shortly after the robbery and shortly after gunfire was heard, Defendant drove the victim's car suspiciously. That is, Defendant sped in the car without turning on the headlights and then stopped in the shadows to avoid detection. Defendant then fled the victim's car after he was spotlighted. These actions constitute evidence of flight, concealment and attempt to avoid apprehension and indicate consciousness of guilt. State v. Davies, supra; State v. Ratliff, supra; State v. Thompson, supra; State v. Daniels, supra. Moreover, circumstantial evidence sufficiently linked the gun, which was proved through ballistics testing to have been used in the robbery, and the plaid/checkered shirt/jacket, which matched the description given by several witnesses as the one worn by the armed robber, to Defendant at the time of his arrest because of the recovery of both items from near Defendant-in the middle of the road where he was ultimately apprehended. Finally, and most significantly, the fact that the victim's driver's license, taken from the victim during the armed robbery, was found in Defendant's pocket after his arrest was undisputed. Thus, the evidence was sufficient to support Defendant's conviction of armed robbery under Jackson v. Virginia, supra.

Motion to Suppress Identification
Defendant frames this issue as whether the trial court erred in denying his motion to suppress Mr. Ashley's identification due to the "suggestive nature of the identification." Defendant argues that Mr. Ashley's identification of Defendant from the photographic lineup was unreliable. He argues that Mr. Ashley saw Defendant twice prior to the lineup and that these circumstances made the subsequent photo lineup identification overly suggestive. Under the facts of the instant case, we must disagree.
The defendant has the burden of proof on a motion to suppress an out-of-court identification. La. C.Cr.P. art. 703D. When reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the *150 hearing on the motion, but also may consider pertinent evidence given at trial. State v. Barber, 32,894 (La.App.2d Cir.12/30/99), 749 So.2d 917, writ denied, 00-0519 (La.11/27/00), 775 So.2d 441; State v. Goodjoint, 30,727 (La.App.2d Cir.6/24/98), 716 So.2d 139; State v. Reed, 97-812 (La.App. 1st Cir.4/8/98), 712 So.2d 572, writ denied, 98-1266 (La.11/25/98), 729 So.2d 572.
To suppress an identification, the defendant must first prove that the identification procedure was suggestive. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, cert. denied, Broadway v. Louisiana, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), citing State v. Prudholm, 446 So.2d 729 (La.1984).
In State v. Johnson, 33,174 (La. App.2d Cir.5/10/00), 759 So.2d 1052, writ denied, XXXX-XXXX (La.9/21/01), 797 So.2d 60, this court held that a lineup is unduly suggestive if the procedure focuses attention on the defendant. Even if the procedure used was suggestive, an identification will be admitted if, under the totality of the circumstances, the identification is found to be reliable. State v. Johnson, supra, citing State v. Savage, 621 So.2d 641 (La.App. 2d Cir.1993), writ denied, 93-2850 (La.9/2/94), 642 So.2d 1282.
The State correctly notes applicable law set forth in State v. Barber, supra, which examined a victim's identification of a defendant made shortly after the crime:
One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. Such identification procedures are generally permitted where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for on-the-spot identification or when identification is made shortly after the commission of the crime. State v. Dauzat, 364 So.2d 1000 (La.1978); State v. Patrick, 31,380 (La.App.2d Cir.10/28/98), 721 So.2d 94, writ denied, 98-2957 (La.3/19/99), 739 So.2d 780; State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir. 1987). Such prompt identification, under appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Williams, 420 So.2d 1116 (La.1982); State v. Bickham, 404 So.2d 929 (La. 1981); State v. Patrick, supra; State v. Cotton, supra.

* * *
This court in State v. Barber, supra, applied the factors set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), to determine that the trial court did not err in denying the motion to suppress. The factors considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, supra. In Barber, supra, any suggestiveness of the identification procedures used was found to have been outweighed by the overall reliability of the identification. Under the totality of the circumstances presented on the Barber record, this court found that there was no substantial likelihood of misidentification. Id.
In the case sub judice, the record reflects that Mr. Ashley saw Defendant in police custody twice-once at the scene where he indicated to police that Defendant was the armed robber and again, *151 inadvertently, at the hospital. Although one-on-one confrontations between the victim and a defendant are not favored, these seem permissible as justified by the overall circumstances, primarily because Defendant was apprehended within a short time after the commission of the offense and was returned to the scene of the crime for on-the-spot identification. See State v. Dauzat, supra; State v. Patrick, supra; State v. Cotton, supra. Such prompt identification, under appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Williams, supra; State v. Bickham, supra; State v. Patrick, supra; State v. Cotton, supra.
We further find that Mr. Ashley's identification of Defendant in the photographic lineup was reliable, despite the alleged suggestiveness of the circumstances, because Defendant has failed to demonstrate a substantial likelihood of irreparable misidentification. That is, considering the factors set forth in Manson v. Brathwaite, supra, the record shows that: (1) the victim had the opportunity to view Defendant at the time of the crime twice-once when he was confronted with Defendant's demand for his car, and, again, when he was confronted with Defendant's second demand for the car and "everything," after being shot; (2) the victim's degree of attention was great, as evidenced by testimony regarding the close proximity of Defendant to the victim during both demands; (3) the accuracy of the victim's prior description of the criminal was great; (4) the level of certainty demonstrated by the victim of Defendant's identity at the photographic lineup was great; and (5) the length of time between the crime and the photographic lineup was just days. Thus, all of the factors set forth in Manson v. Brathwaite, supra, weigh in favor of the reliability of Mr. Ashley's identification of Defendant from the photographic lineup as the individual who robbed him.
Consequently, having determined that Mr. Ashley's identification of Defendant as the armed robber was reliable, the trial court did not err in allowing the identification testimony into evidence to be weighed by the jury.

Adjudication as a habitual offender
Defendant argues that there was insufficient evidence to support his adjudication as a habitual offender because some of the transcript of the habitual offender proceeding is missing. The transcript of the proceedings held on December 13, 2000, is not contained in the record because the tape was lost. Defendant argues that there is no way to tell with certainty which prior convictions were used as predicates, or whether the objections to the habitual offender ruling were properly ruled upon.
The issue of the allegedly missing transcript has been resolved by this court. An order was issued, on this court's own motion, remanding the case for completion of the record, noting the clerk's response to Defendant's designation of record which indicates that no transcript for December 13, 2000, is available. In summary, the trial court was ordered to determine the status of the completeness of the record and to conduct further proceedings if necessary. The trial judge responded with a written order dated October 17, 2001, which essentially states that no new evidence was had on the habitual offender adjudication on December 13, 2000, and that the record was complete for appellate purposes. In addition, the trial court set forth its reasons for adjudication in that order. Since the time of the trial court's order stating that the record is complete, Defendant has not filed a supplemental brief setting forth another argument on this issue besides the record's alleged incompleteness. *152 In the absence of such supplemental argument on these assignments of error, other than the alleged incompleteness of the record, this argument could be considered as abandoned, or at least, moot. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La. 1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). Under the peculiar circumstances of this case, however, we will review the trial court's rulings on Defendant's objections made during the habitual offender proceedings.
The State asserts that the record supports Defendant's adjudication as a third-felony habitual offender. It notes that the transcript of the proceedings held on the motion to reconsider sentence reflects that the reduction of Defendant's adjudication as a fourth- to third-felony offender was based upon the trial court's acceptance of the argument that Defendant's prior conviction of attempted possession of a firearm by a convicted felon could not be used to enhance the instant conviction. The record also reveals that Defendant's objection to the use of one of the predicate offenses was, in effect, sustained. The trial court stated in its order of October 17, 2001, that the simple burglary conviction (docket numbers 150,460 and 152,419) would not be considered as predicate offenses in the habitual offender proceeding. The order clarified that the two predicate offenses used as a basis for Defendant's adjudication as a third-felony offender, in addition to the instant conviction of armed robbery, were the convictions in docket number 152,588 (attempted possession of a firearm by a convicted felon) and docket number 158,234 (unauthorized use of a movable). Thus, the trial court did not rule against Defendant on this issue, and there was no error in this ruling.
Regarding Defendant's objection to the voluntariness of his pleas in the predicate offenses, this court set forth the pertinent law in State v. Stewart, 27,049 (La.App.2d Cir.5/10/95), 656 So.2d 677, 682, writs denied, 95-1764 & 95-1768 (La.12/8/95), 664 So.2d 420. This court discussed the scheme for assigning the burden of proof in a habitual offender proceeding, as set forth by the supreme court in State v. Shelton, 621 So.2d 769 (La.1993), as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [Footnote omitted.] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, ... the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
The court in Shelton, further noted that, unlike the prior approach allocating the *153 entire burden to the state, this new procedure gives appropriate significance to the deeply rooted presumption of regularity attaching to judgments of conviction that have become final. See also LSA R.S. 15:529.1(D)(1)(b).
The record in the instant case indicates that, regarding the predicate offenses in docket number 152,588 (attempted possession of a firearm by a convicted felon) and docket number 158,234 (unauthorized use of a movable), upon the denial of the allegations of the bill of information, the State met its burden of proving the existence of the prior guilty pleas and that Defendant was represented by counsel when they were taken by introduction of the certified minute entries for both convictions. The burden then shifted to Defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. State v. Shelton, supra; State v. Stewart, supra. We find that Defendant failed to meet this burden. Assuming arguendo, however, that Defendant met this burden, we find that the State met its burden by introducing "perfect transcripts" of the taking of both pleas. Both transcripts in docket numbers 152,588 and 158,234 reflect a colloquy between judge and defendant wherein Defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination and his right to confront his accusers. Thus, the State proved that the prior guilty pleas were informed and voluntary and made with an articulated waiver of the three Boykin rights. State v. Shelton, supra.

Excessive Sentence
Defendant first contends that the trial court did not comply with the provisions of La.C.Cr.P. art. 894.1 because it did not give adequate reasons for the sentenced imposed. He further argues that the sentence is excessive, considering the facts and circumstances of the case, even though the sentence is statutorily required. We find no merit in Defendant's arguments.
Since the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, 00-0438 (La.9/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert denied, Johnson v. Louisiana, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000). Furthermore, since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, supra.
In this case, La. R.S. 15:529.1(A)(1)(b)(ii) mandated a life sentence without benefits for Defendant-he was a third-felony offender and one of the prior felonies (armed robbery) is defined in La. R.S. 14:2(13)(w) as a crime of violence.[1]
*154 As this court stated in State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490:
Although, in State v. Dorthey, supra [623 So.2d 1276 (La.1993)], the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. (Citations omitted.)
In Johnson, supra, the supreme court also held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, a defendant must clearly and convincingly show that he is exceptional, which, in this context, means that, because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. State v. Johnson, supra.
Applying the above law to the case sub judice, we find no error in the sentence imposed by the trial court. Defendant was sentenced to the constitutional, mandatory term of imprisonment under La. R.S. 15:529.1(A)(1)(b)(ii); and, therefore, the trial court's compliance with La. C.Cr.P. art. 894.1 was not required. State v. Gay, supra; State v. Owens, supra. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing Defendant.
Defendant failed to meet his burden of rebutting the presumption that a mandatory minimum sentence is constitutional. That is, he failed to even allege, much less to clearly and convincingly show, that he is exceptional because he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to his culpability, the gravity of the offense and the circumstances of the case.

CONCLUSION
For the foregoing reasons, Defendant's, Antonio Sewell, conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that La. R.S. 15:529.1(A)(b)(ii) was recently amended and now reads, "[i]f the third felony and the two prior felonies are felonies defined as a crime of violence, ..." then the sentence is life imprisonment. (Emphasis added.) Under the law in effect at the time of Defendant's adjudication and sentencing as quoted in this opinion, however, the sentence of life imprisonment is correct.