975 So.2d 829 (2008)
STATE of Louisiana, Appellee
v.
Emanuel Jermaine STEWARD, Appellant.
No. 42,705-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*830 Louisiana Appellate Project, by Mary E. Roper, Baton Rouge, for Appellant.
Anthony G. Falterman, District Attorney, Donald D. Candell, Jennifer G. Braud, Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and LOLLEY, JJ.
STEWART, J.
Defendant Emanuel Steward was convicted of simple rape. The trial court sentenced him to 25 years at hard labor in the Louisiana Department of Corrections, with credit for time served. Steward subsequently filed a motion for reconsideration of sentence which was denied. He now appeals. Finding no reversible error, we affirm the trial court's decision.

FACTS
On the night of July 15, 2002, Jeremy Johnson gave R.L., age 17, a ride to Lhauan Washington's house. While R.L. was knocking on the door, Jeremy threw her belongings out of his car and drove off. After discovering that no one was at the house, R.L. walked down the road toward another friend's house.
Defendant Emanuel Steward approached R.L. while riding his bicycle. *831 She asked him if he knew her friends, Lhauan and Donjel. Steward nodded his head and mumbled, but did not say anything. He eventually got off his bicycle and pushed it alongside R.L. Then, Steward pulled out two or three dollars from his pocket and tried to give it to R.L. When she asked what the money was for, he made a gesture, indicating that it was for sex. R.L. told Steward "no" and walked away from him.
Steward then grabbed her from behind and dragged her backwards toward the muddy, gravel driveway of an abandoned house. R.L. testified that she thought he was going to kill her and that she screamed loudly for someone to help her. She scratched Steward several times on his chest and face. R.L. also stated that he proceeded to pull her shorts down and attempted to penetrate her anally. When he was unable to do so, he threw her on the ground, took off her denim shorts, and raped her. R.L. did everything she could, but was unsuccessful in getting Steward off of her. She testified that she did not consent to sexual intercourse with him. When he was finished, Steward put his clothes back on and rode his bicycle through a yard headed toward Peterville Lane.
In the meantime, Barry Cavalier was awoken at 2:00 a.m. to the "horrifying" cry of a woman yelling "somebody help me, please." Cavalier called 911, and Deputy Timothy Naquin of the Assumption Parish Sheriff's Office was dispatched to respond to the call about a woman yelling for help on Klotzville Lane. When Deputy Naquin arrived there, he saw a white female walking toward him. Deputy Naquin testified that R.L. was very upset and hyperventilating. R.L. also blurted out, "I been raped."
R.L. described the assailant to Deputy Naquin, stating that he was a black male she did not know wearing a white T-shirt with blue trim and a picture of a basketball on the front. R.L. also told Deputy Naquin that the assailant did not say anything, but that he grunted or mumbled, and that the assailant rode away on his bicycle through an abandoned yard that connects Klotzville Lane to Peterville Lane. Based upon the description of the assailant, Deputy Naquin thought that it might be Steward, who lived nearby on Peterville Lane.
Deputy Naquin took R.L. to Steward's home, where he noticed a bicycle with fresh mud on the tires and fresh bicycle tracks in the driveway. When officers took Steward to the police unit for R.L. to see whether this was the assailant, she was not sure at first and requested that they make him say something. Before the officers could do anything, Steward made a gurgling noise, and R.L. immediately began to shout that it was him.
The officers took Steward into custody and R.L. to Assumption Community Hospital, where a sexual assault examination was performed. The evidence recovered from R.L. was sent to the North Louisiana Crime Laboratory, which found that DNA from the spermatozoa found in the vaginal swab of R.L. matched Steward's DNA, which had been gained through a blood sample. The state presented photographs to the jury that depicted the abrasions on R.L.'s body and the scratches on Steward's face, chest, and neck area. Deputy Naquin testified that a T-shirt matching R.L.'s description was found on the floor of Steward's bedroom.
Based upon the evidence presented at trial, the jury convicted Steward of simple rape.

DISCUSSION
Authority to Prosecute
In his first assignment of error, the defendant argues that the trial court erred *832 by allowing the assistant district attorneys from Assumption Parish to prosecute this case after venue had been transferred to Lincoln Parish. He asserts that the assistant district attorney from Assumption Parish did not have the authority to prosecute this case because they had not been appointed as special prosecutors for Lincoln Parish, making the verdict in the case an absolute nullity.
The offense was committed in Assumption Parish, and prosecution was initiated when an assistant district attorney for Assumption Parish filed a bill of information charging the defendant with forcible rape on October 22, 2002. On June 27, 2006, the trial court granted the defendant's motion for change of venue and ordered that the case be transferred to Lincoln Parish.
The Lincoln Parish Clerk of Court subsequently appointed two deputy clerks of court from Assumption Parish to act as deputy clerks of court for Lincoln Parish in regard to this case. The Louisiana Supreme Court appointed Judge Alvin Turner, Jr., who was the judge to whom the case had been allotted in Assumption Parish, to preside as judge ad hoc for Lincoln Parish in regard to this case. The record contains no indication that the Lincoln Parish District Attorney appointed the assistant district attorneys from Assumption Parish to prosecute the present case as assistant district attorneys ad hoc for Lincoln Parish, and the parties on appeal do not allege that such an appointment was ever made.
The procedure for a change of venue is set forth in La. C. Cr. P. art. 624, which states, in pertinent part, that "[w]hen a change of venue is granted, . . . the case shall be proceeded with in the same manner as if the proceedings had originally been instituted therein." According to La. C. Cr. P. art. 61, "the district attorney has entire charge and control over every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." Additionally, La. Const. art. 5, § 26(B) states that "a district attorney or his designated assistant, shall have charge of every criminal prosecution by the state in his district." Reading these statutes together, it is clear that the district attorney for the parish to which venue is transferred gains the authority to prosecute that case just as if it had occurred within his jurisdiction.
While La. C. Cr. P. art. 63 states that "[t]he district attorney may employ or accept the assistance of other counsel in the conduct of a criminal case," the special counsel must have been officially appointed. See Opinion of the Attorney General, 1942-44, p. 254. The record does not indicate that the Lincoln Parish District Attorney made such an appointment in the present case.
The third circuit essentially addressed this same situation in State v. Juniors, 2005-649 (La.App. 3d Cir. 12/30/05), 918 So.2d 1137, writ denied, XXXX-XXXX (La.9/15/06, 936 So.2d 1257), cert. denied, ___ U.S. ___, 127 S.Ct. 1293, 167 L.Ed.2d 110 (2007), wherein the defendant argued that prosecutors from St. John the Baptist Parish did not have authority to prosecute him once venue was transferred to Vermillion Parish without an authorization from the Louisiana Supreme Court.[1] The defendant similarly argued that his conviction was a nullity because the prosecutors from St. John the Baptist Parish were acting outside their territorial jurisdiction and that this constituted a structural *833 error requiring remand for a new trial. Id. The third circuit found that the challenges to the authority of the prosecutors or presiding judge should have been raised pursuant to a pre-trial motion to quash as provided in La. C. Cr. P. art. 531. The failure to do so precluded him from raising the issue on appeal.[2]Id. at 1142.
Other cases have also found that the failure to object to whether the prosecutor had been appointed to act as district attorney pro tempore precludes the issues from appellate review. See State v. Stephney, 137 La. 545, 68 So. 949 (1915) (Objection to the prosecutor having not been appointed district attorney pro tempore at the time the indictment was returned should have been pleaded before trial.); State v. Nunez, 26 La. Ann. 605 (La.1874) (Court refused to consider claim, that the prosecutor had not been appointed as district attorney pro tempore at the time the bill of information was filed, because the defendant failed to plead it before trial.)
The third circuit in Juniors also rejected the defendant's argument that the error was a structural error, because it "could have been easily corrected pre-trial, but absent that correction, it had no effect on the conduct of the trial." State v. Juniors, 918 So.2d at 1142-1143. In State v. Langley, XXXX-XXXX (La.5/22/07), 958 So.2d 1160, the Louisiana Supreme Court addressed the issue of what constitutes a structural error requiring automatic reversal instead of a trial error, noted that very few errors constitute structural defects, and noted that structural defects are not subject to harmless-error analysis:
In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court distinguished between structural defects in a criminal trial and all other errors committed during the course of the proceedings. The Court thereby sought to clarify when harmless-error analysis is appropriately conducted by an appellate court (for trial error) and when it is not (structural defect). As to the latter class of error, "structural defects in the constitution of the trial mechanism . . . defy analysis by `harmless-error' standards . . . [because they] affect the framework within which the trial proceeds, rather than simply [interject] an error in the trial process itself." Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265; see also Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S.Ct. 1710, 1717, 125[123] L.Ed.2d 353 (1993) ("The existence of such [structural] defects . . . requires automatic reversal of the conviction because they infect the entire trial process.")
Structural defects occur in only "a very limited class of cases," and include the total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant's race, deprivation of the right to self-representation at trial, the right to a public trial, and erroneous reasonable doubt instructions. Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 1549-50, 137 L.Ed.2d 718 (1997); Neder v. United States, 527 U.S. 1, 7-8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999); United States v. Stevens, 223 F.3d 239, 244 (3rd Cir.2000); see also State v. Ruiz, XXXX-XXXX p. 6 (La.4/11/07), 955 So.2d 81.
The court went on to note that "[W]hen the Supreme Court speaks of a structural defect, it means that `the entire conduct of the trial from beginning to end is obviously affected by the [error],'" and that "the *834 Court is referring to something which affects the entire framework of the trial and not something which may have differing degrees of impact, depending on other trial factors." State v. Langley, 958 So.2d at 1167-1168, quoting Fulminante, 499 U.S. at 309-310, 111 S.Ct. at 1265. The court stated that most errors which occur are trial errors, even though they may impact a defendant's constitutional rights; moreover, most constitutional errors can be reviewed for harmless error. State v. Langley, 958 So.2d at 1168, citing Fulminante, 499 U.S. at 306, 111 S.Ct. at 1263.
The failure to appoint the assistant district attorneys from Assumption Parish as assistant district attorneys ad hoc in the present case is not subject to appellate review because the defendant failed to raise the issue before trial, when it could have been easily corrected. Furthermore, this error does not rise to the level of structural error requiring an automatic reversal because it does not fit within the six categories of errors recognized by the United States Supreme Court as structural errors nor does this error affect the entire framework or conduct of the trial.
Therefore, this assignment is without merit.
Voice Identification
In his second assignment of error, the defendant asserts that the trial court erred in denying his motion to suppress the "show up" identification of himself made by R.L. shortly after the offense occurred. He argues that the gurgling noise he made was a common sound made by those who are deaf, not an identifying characteristic unique to him. Thus, basing the identification on this noise is not reliable.
According to La. C. Cr. P. art. 703(D), the defendant bears the burden of proof on a motion to suppress an out-of-court identification. State v. Sewell, 35,549 (La.App. 2d Cir.2/27/02), 811 So.2d 140, 149, writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 535. When reviewing a trial court's ruling on a motion to suppress, the appellate court may consider pertinent evidence given at trial in addition to the evidence adduced at the hearing on the motion. State v. Sewell, 811 So.2d at 149-150.
The likelihood of misidentification violates due process when the totality of the circumstances indicates that misidentification probably occurred. State v. Brown, 40,769 (La.App. 2d Cir.3/8/06), 923 So.2d 976, 979, citing Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Thus, the defendant must prove that the identification procedure was unduly suggestive and that there is a substantial likelihood of misidentification in addition to the suggestive identification procedure. State v. Sewell, 811 So.2d at 150.
When assessing the reliability of an identification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. State v. Sewell, 811 So.2d at 150, citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
While not favored by the law, one-on-one identifications between a suspect and victim are permissible when justified by the overall circumstances, such as "where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for on-the spot identification or *835 when identification is made shortly after the commission of the crime." State v. Tilmon, 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607, 612-613, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866. Under the appropriate circumstances, such a prompt identification promotes accuracy as well as expediting the release of innocent suspects. State v. Tilmon, 870 So.2d at 613. Even if the one-on-one identification is suggestive and not favored by the law, it will still be permissible if justified by the overall circumstances. State v. Tilmon, 870 So.2d at 613.
Voice identification has been found as reliable and sufficient evidence of identity. State v. S.B., Jr., 31,264 (La.App. 2d Cir.9/25/98), 719 So.2d 1121. In State v. Colvin, 494 So.2d 1357, 1362-1363 (La. App. 2d Cir.1986), writ denied, 497 So.2d 311 (La.1986), the robbery victim was unable to make a positive identification based strictly on the defendant's physical appearance in the one-on-one identification, but relied was able to make the identification after hearing the defendant's voice. In analyzing whether the identification was admissible, this court applied the factors from Manson v. Brathwaite, supra, to determine the reliability of the identification. State v. Colvin, 494 So.2d at 1362. This court found that although the one-on-one identification process was suggestive, there was no substantial likelihood of misidentification because of the reliability of the victim's identification. State v. Colvin, 494 So.2d at 1362-1363.
Similarly, in State v. Johnson, 33,174 (La.App. 2d Cir.5/10/00), 759 So.2d 1052, 1059-1060, writ denied, XXXX-XXXX (La.9/21/01), 797 So.2d 60, the rape victim was initially unable to identify her assailant from the photographic line-up, but was able to identify him based upon the sound of his voice. This court applied the factors from Manson v. Brathwaite, supra, to assess the victim's credibility to find that although the identification process was suggestive, the identification was admissible because there was no substantial likelihood of misidentification. State v. Johnson, 759 So.2d at 1060.
Although R.L. had a sufficient amount of time to see the assailant, she testified that it was dark and that she had trouble seeing him. R.L. gave the officers a description of her assailant, in terms of what he was wearing, his mode of transportation, the way he sounded, and the direction in which he left. Detective Carter testified at the hearing that he noticed a fresh, bleeding scratch on the defendant's nose and a scratch on his chest when the defendant first came to the door, and the state presented photographs depicting the scratches on the defendant's face, chest, and neck area. R.L. was not sure that the defendant was her assailant when she first saw him in the one-on-one identification process; however, R.L. was completely certain that the defendant was the assailant when he made a gurgling noise.
Furthermore, the DNA from the spermatozoa found in the vaginal swab of R.L. matched the DNA of the defendant. Deputy Naquin also testified that a T-shirt matching R.L.'s description was found on the floor of the defendant's bedroom.
The one-on-one identification in the present case was appropriate because the victim was able to view the defendant shortly after the commission of the offense. Whatever suggestiveness existed in the process was overcome by the totality of the circumstances which clearly indicate no substantial likelihood of misidentification. Thus, the trial court properly denied the defendant's motion to suppress the one-on-one identification.
This assignment is therefore without merit.
*836 Error Patent
According to La. R.S. 14:43(B), "Whoever commits the crime of simple rape shall be imprisoned, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years." The sentencing transcript and minutes indicate that when the trial court imposed the maximum sentence of 25 years at hard labor, it failed to state that the sentence was to be served without benefit of parole, probation, or suspension of sentence. The trial court's failure to state that the sentence is to be served without benefits will be corrected automatically by operation of La. R.S. 15:301.1. See State v. Klasek, 37,114 (La.App. 2d Cir.4/11/03), 843 So.2d 646, 649, fn. 1, writ denied, 03-1359 (La. 12/12/03), 860 So.2d 1149.

CONCLUSION
Based on the above reasons, we affirm Defendant Emanuel Steward's conviction and sentence.
AFFIRMED.
NOTES
[1] The defendant also argued that the presiding judge from St. John the Baptist Parish did not have authority to preside over his case in Vermillion Parish. State v. Juniors, 918 So.2d at 1141-1142.
[2] La. C. Cr. P. art. 531 states, "All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of `not guilty' and of `not guilty and not guilty by reason of insanity,' shall be urged by a motion to quash."